**James HAMBY, Employee/Appellant,**

v.

**RAY WEBBE CORPORATION,
Employer/Respondent,**

**and**

**Treasurer of the State of Missouri as
Custodian of the Second Injury
Fund, Respondent.**

**No. 64627.**

Missouri Court of Appeals,
Eastern District,
Division Two.

May 31, 1994.

Thomas M. Centric, Daniel V. Boeckman, St. Louis, for employee-appellant.

Daniel L. Steigerwald, Hayes, Newmark & Steigerwald, St. Louis, for employer-respondent.

Jeremiah W. (Jay) Nixon, Atty. Gen., Maria W. Campbell, Asst. Atty. Gen., Jefferson City, for Second Injury Fund.

KAROHL, Judge.

James Hamby, a former employee of Ray Webbe Corporation, (Webbe) appeals from an award of permanent partial disability entered by the Administrative Law Judge of the Division of Workers' Compensation and affirmed by the Labor and Industrial Relations Commission (Commission). Hamby was awarded temporary total disability payments totalling $23,820.02 and permanent partial disability payments totalling $16,-027.11. No liability was found against the Second Injury Fund. It is not represented in this appeal. Hamby asserts four reasons to support his argument that the Commission's finding that he failed to prove permanent total disability or a need for future medical care and treatment is not supported

by substantial and competent evidence. We affirm.

We must examine the record in a light most favorable to the workers' compensation award. If it is supported by competent and substantial evidence, we will not disturb it. *Smith v. Arthur's Fashions*, 843 S.W.2d 3, 5 (Mo.App.E.D.1992). The decision of the Commission may be set aside only if it is clearly contrary to the overwhelming weight of the evidence, and we may not substitute our judgment on the evidence for that of the Commission even though a finding by the Commission to the contrary would also have been supported by the evidence. *Hendricks v. Motor Freight Corp.*, 570 S.W.2d 702, 706–707 (Mo.App.1978).

Hamby sustained a compensable injury on April 11, 1988, while working as a carpenter for Webbe. He fell approximately sixteen feet and landed on a reinforcing rod which penetrated his right leg between the knee and ankle. He also injured his neck, back and shoulder. As a result of his injuries, he suffers from blackouts, dizziness, pain and headaches. He had prior kidney, heart and back problems. His other prior conditions include recurrent chronic pancreatitis, stomach ulcers and hypertension.

On April 11, 1988, Hamby had been employed in the construction industry as a general carpenter for over thirty years and was fifty-eight years old. He graduated from high school, after which he spent twenty-one months in the army. Since then he has been exclusively employed in the general carpentry industry.

Following Hamby's April 1988 job-related fall, he received temporary total disability benefits from the date of the injury through January 23, 1989, when he returned to work at an amusement park as a carpenter supervisor. He worked off and on during 1989, working a total of 1129 hours. The physical labor hurt his shoulders, the back of his head, and caused him to suffer muscle spasms in his leg. He stopped working completely in November, 1989. Temporary total disability benefits resumed in January of 1990 and continued through December of 1990.

Two construction industry professionals familiar with Hamby's work testified that he was unable to do construction work. One licensed psychologist and vocational rehabilitation expert testified Hamby could not function in the work place based on the combination of all of his injuries, his advanced age, and his work history. Three doctors testified Hamby was permanently and totally disabled. Three doctors testified for Webbe and the Second Injury Fund that Hamby could work, though he could do no heavy lifting. One doctor testified Hamby needed no further medical treatment for work-related injuries.

■ Hamby's first point on appeal is the combination of disabilities pre-dating the accident of April 11, 1988, and the disabilities that flowed from the April 11 injury rendered him incapable of performing in the open and competitive labor market. He argues the Commission's failure to award permanent and total disability benefits is contrary to the overwhelming weight of the evidence.

Although there is ample evidence that would have supported an award of permanent total disability benefits in the present case, our role is limited to determining whether the decision of the Commission is clearly contrary to the overwhelming weight of the evidence. The Commission is charged with the responsibility of passing upon the credibility of witnesses and may disbelieve testimony of witnesses though no contradictory or impeaching evidence is introduced. *Page v. Green*, 686 S.W.2d 528, 530 (Mo.App. 1985). Three doctors expressed opinions which directly supported the award of permanent partial disability benefits. Dr. Patrick Hogan, a neurologist, testified Hamby could work without restrictions. Dr. John Gragnani testified Hamby could work if he avoided heavy lifting or working in high places. A report completed by Dr. Mark Dobyns and submitted on behalf of the Second Injury Fund stated that Hamby could do any job that did not involve physical labor. We need not detail the voluminous contrary evidence. Point denied.

■ Hamby's second claim is the Commission erred when it disregarded the testimony

of Dr. Samuel Bernstein, the only vocational rehabilitation expert to testify. Essentially, Hamby argues that the evidence of this witness is the only credible evidence on the issue of Hamby's ability to function in the work place. Hamby reasons that an administrative agency cannot arbitrarily ignore the testimony of an uncontradicted witness, unless the agency makes a specific finding that the evidence is not credible.

The premise of Hamby's argument is faulty. The testimony of Dr. Bernstein is not uncontradicted. Medical experts testified in opposition to Bernstein's opinions. There is no authority to support the proposition that only experts with identical credentials can contradict each other. We may not consider the weight of this witness's testimony as compared to other witnesses. Point denied.

In his final two points, Hamby argues the Commission erred in sustaining Webbe's objection to the admission of two exhibits consisting of Hamby's medical bills, and the failure to award future medical expenses was contrary to the overwhelming weight of the evidence. Exhibit M showed a "balance forward" of $330 owed to Mid–America Orthopaedic Surgery. Hamby testified this bill was for the services of Dr. Lee Vander Lugt, Hamby's treating physician following the April 11 injury. Exhibit N showed a "previous balance" of $45 owed to Boonslick Medical Group. Hamby testified this bill was for Dr. Robert Yanover's services.

Hamby cites authority for the proposition that the presumption medical bills are fair and reasonable extends to unpaid bills as well as those paid, and an employer must show that the medical bills are unreasonable. *Martin v. Mid–America Farm Lines, Inc.*, 769 S.W.2d 105, 112 (Mo. banc 1989). Webbe's objection to the two medical bills in question was that the bills were not itemized and there was no way to determine the nature of underlying treatment and whom should be responsible for payment. The bills simply indicated an unpaid balance remained payable by claimant. Hamby did not respond to the objection at the hearing. The only response made here is the bills should have been admitted because they were fair

and reasonable. The objection was founded on no proof of foundation or relevance. Given the divergence of medical opinions concerning which of Hamby's illnesses and conditions were brought on by which injuries or conditions, we cannot find the Commission's ruling sustaining Webbe's objection to the two unitemized medical bills was in error.

Despite the existence of evidence that Hamby continues to require medical attention for his numerous conditions, there was also expert testimony to support the Commission's finding that no future medical care is required to treat Hamby for injuries stemming from his April 11, 1988 injury. One of Hamby's own doctors testified he needed no further medical treatment except for treatment of a blood pressure problem that was unrelated to the work injury. A doctor testified for Webbe that Hamby was in need of no additional treatment. The points concerning the payment of his medical expenses are denied.

We affirm.

CRANE, P.J., and CRAHAN, J., concur.