Melvin N. SIFFERMAN,
Claimant–Appellant,

v.

SEARS, ROEBUCK AND COMPANY, Allstate Insurance Company, and Second Injury Fund, Respondents.

No. 19918.

Missouri Court of Appeals,
Southern District.

Aug. 1, 1995.

Motion for Rehearing or Transfer
was Denied on Aug. 23, 1995.

Application to Transfer Denied
Oct. 24, 1995.

Michael D. Mayes, Schmidt, Kirby and Sullivan, P.C., Springfield, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., E. Joseph Hosmer, Asst. Atty. Gen., Jefferson City, for Second Injury Fund.

Brent S. Bothwell, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for Sears, Roebuck and Co. and Allstate Ins. Co.

FLANIGAN, Judge.

Claimant Melvin Sifferman filed a claim under the Workers' Compensation Law against his employer, Sears, Roebuck and Company, for injuries arising out of an accident which occurred on March 17, 1990. The custodian of the Second Injury Fund was made an additional party. The Labor and Industrial Relations Commission entered a final award allowing compensation and affirming an award previously entered by the administrative law judge.

The award of the Commission included the following:

"The claimant's preexisting conditions were of sufficient magnitude that the medical experts found them to be disabling and, in fact, the claimant has had episodes of lost time from work for his problems arising from a hip fracture and back pain dating to 1984. This preexisting condition is, by the greater weight of the evidence presented, sufficient to establish liability to the Second Injury Fund in the amount of 15 percent of the whole person, which preexisted his injuries of March 17, 1990. The claimant's injuries of March 17, 1990, to his hip and back were of sufficient magnitude that the claimant now has, by the greater weight of the credible evidence, a permanent partial disability of 35 percent to the person referable to his back injuries."

The Commission awarded compensation in the amount of $27,816, of which $24,339 was payable from the employer, based on a permanent partial disability rating of 35 percent of the person (140 weeks), and $3,477 (20 weeks) was payable from the Second Injury Fund.

■ Claimant's first point is that the Commission erred in finding "[claimant] was permanently partially disabled rather than permanently totally disabled," in that the finding "is not based on substantial evidence in the record as a whole and contrary to the overwhelming weight of the evidence."

Appellate review of the Commission's award is governed by § 287.495,[1] which reads, in pertinent part:

"[I]n the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award."

In *Alexander v. D.L. Sitton Motor Lines,* 851 S.W.2d 525, 527[1] (Mo.banc 1993), the court said:

"Under Article V, § 18, of the Missouri Constitution we review the decision of the Commission to see that it is supported by competent and substantial evidence on the record as a whole. In that review, we defer to the Commission on issues involving the credibility of witnesses and the weight to be given testimony, and we ac-

knowledge that the Commission may decide a case 'upon its disbelief of uncontradicted and unimpeached testimony.' Questions of law, of course, are the proper subject of our review. Section 287.495.1, RSMo 1986." (citation omitted).

■ The award of the Commission may be overturned by this court only if it is not supported by substantial evidence or if it is clearly contrary to the overwhelming weight of the evidence. This court, viewing the record in the light most favorable to the findings of the Commission, must determine whether the Commission could have reasonably made its findings and award. *Johnson v. City of Duenweg Fire Dept.,* 735 S.W.2d 364, 366[1, 2] (Mo.banc 1987).

"The term 'total disability' as used in [the Workers' Compensation Law] shall mean inability to return to any employment and not merely mean inability to return to the employment in which the employee was engaged at the time of the accident." § 287.020.7.

In the following cases, the claimant contended that he or she was totally disabled and that the Commission erred in ruling otherwise: *Massey v. Missouri Butcher & Cafe Supply,* 890 S.W.2d 761 (Mo.App.1995); *Hamby v. Ray Webbe Corp.,* 877 S.W.2d 190 (Mo.App.1994); *Story v. Southern Roofing Co.,* 875 S.W.2d 228 (Mo.App.1994); *Faubion v. Swift Adhesives Co.,* 869 S.W.2d 839 (Mo.App.1994); *Frazier v. Treasurer of Missouri,* 869 S.W.2d 152 (Mo.App.1993); *Thornton v. Haas Bakery,* 858 S.W.2d 831 (Mo.App.1993); *Lawrence v. Joplin R–VIII School Dist.,* 834 S.W.2d 789 (Mo.App.1992); *Jones v. Jefferson City School Dist.,* 801 S.W.2d 486 (Mo.App.1990); *Johnson v. Terre Du Lac, Inc.,* 788 S.W.2d 782 (Mo.App.1990); *Doria v. Chemetron Corp.,* 784 S.W.2d 323 (Mo.App.1990); *Sellers v. Trans World Airlines, Inc.,* 776 S.W.2d 502 (Mo.App.1989); *Crum v. Sachs Elec.,* 769 S.W.2d 131 (Mo.App.1989). In each of them, the claimant's contention was rejected and the Commission's award, based on findings of partial disability, was affirmed.

1. All references to statutes are to RSMo 1994, V.A.M.S.

To determine if claimant is totally disabled, the central question is whether, in the ordinary course of business, any employer would reasonably be expected to hire claimant in his present physical condition. *Massey*, at 763[2]. This court will uphold a finding of the Commission consistent with either of two conflicting medical opinions if supported by competent and substantial evidence upon the record. *Id.* Total disability means the inability to return to any reasonable employment. It does not require that the claimant be completely inactive or inert. *Lawrence*, at 792. The determination of a specific amount or percentage of disability awarded to a claimant is a finding of fact within the province of the Commission, and this court will not substitute its judgment for that of the Commission even if this court would have made a different initial conclusion. *Jones*, at 489[7]. The Commission is not bound by the expert's exact percentages and is free to find a disability rating higher or lower than that expressed in medical testimony. *Id.* at 490. The Commission may consider all of the evidence, including the testimony of the claimant, and draw all reasonable inferences in arriving at the percentage of disability. *Doria*, at 325[2].

On March 17, 1990, claimant, a delivery truck driver employed by Sears, was loading tractor parts at the Sears store in Springfield. He lost his footing, fell off the truck, and landed on his left hip and back. He was taken to a hospital by ambulance, x-rayed, given pain medications, and sent home.

His treating physician was Robert Bennett, M.D. He initially received conservative treatment, but on June 11, 1990, Dr. Bennett performed surgery on his low back. He tolerated the surgery well and returned to work on August 1, 1990, doing light work such as cleaning up the loading facilities and sweeping floors. He testified that at the end of an eight-hour day he was physically spent and could do nothing but rest for the next day's work. In October 1990, his light duty position was terminated and he has not worked since that time.

Claimant had some preexisting conditions due to an incident in 1984 when a tree fell on him, resulting in a fracture to his right hip which required surgery and the insertion of plates. He was off work for approximately five months due to the 1984 incident.

Medical evidence, consisting of depositions and reports, was introduced by both sides. It included the following:

Robert Bennett, M.D.: Claimant was seen on September 11, 1990, for reevaluation of his back. He continues to have pain in his back with occasional pain radiating down his leg. He is unable to do any heavy lifting without discomfort. His wounds have healed nicely. He has some stiffness of motion, and there is no evidence of any neurological deficit. X-rays show the back to be maintaining satisfactory position, but he has fairly advanced degenerative joint disease affecting other portions of his lumbar spine. This condition certainly contributes to the overall symptomatology of chronic low grade back pain. It is my belief he will not be able to return to an occupation requiring heavy lifting, lifting with twisting, or either sitting or standing for prolonged periods of time. It is my feeling he has a permanent partial disability of 50 percent of whole body function. On February 5, 1992, I again saw claimant. His myelogram shows some spinal stenosis at L4-5 and 3-4, with a suggestion of bulging disk. Further decompression in his back may result in some instability and might warrant internal fixation. He has had some improvement since the onset of these symptoms and we have decided to try to continue conservative care without operative intervention.

Janie Vale, M.D.: I examined claimant on January 16, 1991, at the request of the employer. As a result of the fall at work [March 17, 1990], claimant sustained trauma to the lumbosacral back and left hip areas. He had an excellent resolution of the probable fracture of the left hip and sustained no impairment related to the left hip injury. He suffered a disk herniation as a result of his fall, and his fall resulted in aggravation of a preexisting degenerative change in the lumbosacral back. He had at least a 15 to 20

percent preexisting impairment of the total body, and he has a 30 percent permanent partial impairment of the total body as a result of the fall. With the progression of his degenerative changes, I would expect that future medical care would be required. Another reason I anticipate future treatment is because of his abdominal obesity, causing undue stress and strain on his back.

William Folck, M.D.—Report introduced by Second Injury Fund: I examined claimant on July 23, 1992, and obtained a history of the accident of March 17, 1990, and the 1984 incident involving the falling of a tree. Claimant states as long as he stays within his lifting or moving limit of 25 pounds he does well. He is a 61 year-old male with a healthy appearance, well tanned, alert, cooperative, and very pleasant. X-ray examination conducted. In the accident of March 17, 1990, he sustained a contusion and possible incomplete fracture of the left hip area, with strain and sprain and irritation of the low back and herniation of an intervertebral disk with laminectomy and excision on June 11, 1990. He has had a fairly good response to his surgical procedures and, in fact, has fairly good motion with generalized clinical improvement. His problem is complicated by preexisting degenerative arthritic changes which appear to be well under control at this time, as well as the prior history of old fracture to his right hip. My conclusions: Claimant is disabled to the extent of 50 percent permanent partial disability of the body as a whole; preexisting his injury of March 17, 1990, claimant had a permanent partial disability of the body as a whole of 15 percent due to his prior right hip fracture and degenerative changes about his back; as a result of his injuries of March 17, 1990, and aggravation of his underlying degenerative arthritic changes, claimant has a disability of the body as a whole of 35 percent. Claimant appears to be functioning quite well but should not go into heavy lifting or straining or awkward work activities. He is certainly able to, and should be encouraged to, do light work activities. I anticipate no complications.

Phillip Eldred, a witness for claimant, testified: I am a rehabilitation consultant. I reviewed claimant's medical reports and records, and conducted a vocational evaluation. Claimant has a high school education. He is of advanced age and is also close to retirement. I believe claimant is not employable in the competitive labor market and it is unlikely an employer would consider employing him in the normal course of business. Claimant's age is very much a factor in his employability. He has no transferable job skills or skills in semi-skilled work. He has a low educational ability.

Michael Lala, a witness for the Second Injury Fund, testified: I am a certified rehabilitation counselor and I have reviewed claimant's medical history and made a vocational assessment evaluation. Claimant does not possess skills that would transfer to lighter types of work. Claimant is restricted to a reduced range of light and sedentary work which would allow him to alternate positions so that he did not sit or stand for prolonged periods of time. These jobs would include bandsaw operator, putty table worker, sales/service establishment counter attendant, cashier/ticket seller, and telephone solicitor. Although claimant considers himself to be retired, he is not precluded from engaging in a wide range of jobs within stated limitations. He is employable in the open labor market and is not permanently and totally disabled from work activities.

Claimant contends that the foregoing record required the Commission to find that he was permanently and totally disabled and that the Commission's finding of permanent partial disability was not based on substantial evidence and was contrary to the overwhelming weight of the evidence. This court rejects that contention and holds that the Commission's disability rating is supported by "competent and substantial evidence on the record as a whole." *Alexander*, at 527[1]. Claimant's first point has no merit.

Claimant's second point is that the Commission erred in denying future medical benefits "where that denial is not based on substantial evidence and requires [claimant] to offer 'conclusive testimony or evidence' in

support of future medical benefits where this is not the standard of proof."

The Commission's award contained the following: "The medical experts offer no conclusive testimony or evidence to suggest that the claimant is in need of additional medical treatment, and none is provided for in this award."

Black's Law Dictionary, Revised Fourth Edition, defines "conclusive evidence" as follows: "That which is incontrovertible, either because the law does not permit it to be contradicted, or because it is so strong and convincing as to overbear all proof to the contrary and establish the proposition in question beyond any reasonable doubt. *Thompson Lumber Co. v. Interstate Commerce Commission,* (Com.Ct.) 193 F. 648 [682], 682."

"The burden is on the claimant to prove all material elements of [his] claim." *Meilves v. Morris,* 422 S.W.2d 335, 339[5] (Mo.1968). "The claimant does not have to absolutely establish the elements of [his] case. It is sufficient if [he] shows them by reasonable probability. 'Probable' means founded on reason and experience which inclines the mind to believe but leaves room for doubt. *Ellis v. Western Electric,* 664 S.W.2d 639, 642 (Mo.App.1984)." *Tate v. Southwestern Bell Telephone Co.,* 715 S.W.2d 326, 329 (Mo. App.1986). "The essential elements of a workmen's compensation case are required to be proven in the same manner as essential elements are established in the ordinary action at law. A compensation claimant is not required to make stronger proof than would be required to establish liability under the common law." *Davies v. Carter Carburetor, Div. ACF Indus., Inc.,* 429 S.W.2d 738, 749[9] (Mo.1968).

■ Future medical care must flow from the accident before the employer is to be held responsible, and a mere possibility of need of further care does not constitute substantial evidence to support an award of future medical care. *Modlin v. Sun Mark, Inc.,* 699 S.W.2d 5, 7[3, 4] (Mo.App.1985).

"We do not think that the Act requires that there be evidence of the specific medical treatment or procedures that will be necessary in the future as that may put an impossible and unrealistic burden upon the employee." *Bradshaw v. Brown Shoe Co.,* 660 S.W.2d 390, 394[7] (Mo.App.1983).

In response to claimant's second point, the brief of the employer-insurer states: "Respondents admit that the language contained in the award of the Administrative Law Judge, which was adopted by the Industrial Commission, may be unartfully worded and thereby subject to some question as to what legal standard was relied upon in making the award."

■ It was not claimant's burden to produce "conclusive testimony or evidence" to support his claim for future medical benefits. It was sufficient if claimant showed "by reasonable probability" that he was in need of additional medical treatment by reason of the accident of March 17, 1990.

The record contains evidence which, if believed by the Commission and gauged by the correct standard of proof, would have supported an award of future medical benefits. For that reason, it is necessary to reverse that portion of the award which denied claimant's request for future medical benefits and to remand the cause to the Commission for reconsideration of that issue under the proper standard of proof.

That portion of the Commission's award which denied claimant's request for additional medical treatment is reversed and the cause remanded to the Commission for reconsideration of that request consistent with this opinion. In all other respects, the award of the Commission is affirmed.

SHRUM, C.J., and MONTGOMERY, J., concur.