William HAY, Respondent,

v.

William SCHWARTZ, et al., Appellants.

No. WD 55761.

Missouri Court of Appeals,
Western District.

Dec. 29, 1998.

David J. Moen Jefferson City, MO Attorney for Respondent,

Robert L. Hawkins, III Jefferson City, MO Attorney for Appellants.

Before ULRICH, P.J., and SMART and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

This is an appeal from the judgment[1] of the circuit court reversing the decision of the Board of Trustees (the Board) of the Missouri Local Government Employees Retirement System (LAGERS) denying William Hay (Hay) duty disability retirement benefits (benefits) pursuant to § 70.680.3.[2]

Hay raises two points on appeal. In Point I, he claims that the Board's decision denying him benefits was not supported by the evidence in that he presented undisputed, credible, competent, and substantial evidence to show that he was totally and permanently mentally disabled from his job as fire marshall as the natural and proximate result of a personal injury or disease which arose out of and in the course of the actual performance of his job duties. In Point II, he claims that the Board's decision was not supported by the evidence in that his expert witnesses'

undisputed testimony and reports supported an award of benefits and, not specifically finding that such evidence was incredible or unworthy of belief, the Board was not free to disregard it.

We affirm.

## Facts

Hay began serving as a volunteer firefighter for the Sni Valley Fire Protection District (the District) in December 1980 and served as such until 1991. In 1991, he became a full-time firefighter. In 1993, Hay was promoted to the rank of captain and, in 1994, was promoted to fire marshall. As a part of his job, he was dispatched to emergency fire, medical, and rescue scenes. In 1991, just after becoming a full-time firefighter, Hay began contemplating having an extra-marital affair. As a result, he and his wife attended three or four sessions of marriage counseling.

Over the course of his employment with the District, Hay responded to numerous emergency scenes involving traumatic deaths. For example, on one occasion he responded to a motor vehicle accident involving a young driver who had both his arms severed. Before Hay and other emergency personnel were able to free the victim from his automobile, he bled to death. On another occasion, Hay responded to a scene where a woman committed suicide by placing her head in the path of a tractor trailer on an interstate highway. As a further example, he was once required to assist in the collection of the remains of a man who died from a fire at his mobile home.

In 1994, Hay began experiencing anxiety attacks, insomnia, and depression. On February 18, 1994, he experienced heart palpitations and sought treatment in a hospital emergency room. On February 21, 1994, he sought follow-up treatment from Dr. Geha, his family physician, who noted that his heart palpitations may have been related to panic

---

1. Although this is an appeal from the judgment of the circuit court reversing the decision of the Board which favored Hay, because we review the decision of the Board which went against Hay, Hay brings the appeal and Rule 84.05(e) requires that he file the appellant's brief, even though he is denominated as the respondent in the case.

2. All statutory references are to RSMo 1994, unless otherwise indicated.

attacks. Dr. Geha prescribed Vistaril, a medication used to treat anxiety.

Between 1994 and 1996, Hay's condition grew progressively worse. Whenever an emergency situation arose at work, he suffered anxiety attacks, had trouble focusing on his job, and suffered a loss of appetite. Sometime following his treatment by Dr. Geha, he was treated by a psychiatrist who prescribed Zoloft, a medication used to treat depression. On June 26, 1995, he presented himself at the emergency room of the Eastern Jackson County Psychiatric Associates, Inc., and was seen by Dr. Edwards. Dr. Edwards' notes indicated that Hay reported that he had been thinking a lot about death and a friend who had tried to commit suicide. In early February 1996, Hay responded to a murder/suicide scene where a man had shot and killed his girlfriend before killing himself. Hay was an acquaintance of the victim's mother.

On February 16, 1996, Hay went to the Blue Springs, Missouri, branch office of the Comprehensive Mental Health Services, Inc., and reported that he had been concerned that he might commit suicide and had not seen his psychiatrist since September 1995. He complained that within the last year he had been experiencing nightmares, sleep disturbances, headaches, and chest pains. The clinician's notes indicated that Hay was feeling hopeless about his situation and was prone to react to the histories of others who experienced trauma such that he experienced anxiety. The clinician diagnosed him with generalized anxiety disorder and advised him to seek treatment with his private therapist and to continue taking medication for his depression and anxiety.

On February 21, 1996, Hay went again to the Eastern Jackson County Psychiatric Associates, Inc., office. He reported that he had been doing well until he responded to a murder/suicide scene approximately two weeks earlier. The treating therapist's notes indicated that Hay reported that his family physician had recommended that he consider another line of work.

On February 23, 1996, Hay submitted an application for retirement to the Board seeking benefits pursuant to § 70.680 and requesting that his retirement be effective April 1, 1996. On March 13, 1996, the District's fire chief, Hay's supervisor, completed a "Statement of Disability by Employer" form issued by LAGERS. He reported that Hay's mental problems prevented him from performing his duties, and that he believed that his incapacity occurred as the natural and proximate result of his injury or disease that arose out of and in the course of his duty as fire marshall. Hay retired from his job as fire marshall effective April 1, 1996.

Pursuant to § 70.680.3, Drs. Bregant, Sanders, and Geha were selected as the medical committee to examine and report on Hay's benefits claim. On March 5, 1996, Dr. Geha submitted his report to the Board. He stated, *inter alia*, that Hay suffered from acute and chronic anxiety and situation depression and that he was permanently disabled such that he was unable to perform his duty as fire marshall. Dr. Geha explained that Hay was unable to handle the stress of human tragedies during emergency situations. On April 8, 1996, both Drs. Bregant and Sanders filed their reports with the Board. Dr. Bregant stated that Hay was permanently and totally disabled from his occupation as fire marshall. Dr. Sanders, the Board's medical advisor, stated that he diagnosed Hay with acute and chronic anxiety and situation depression. He reported that it appeared that he had a serious disability because of psychiatric illness but believed that a second opinion was advisable to determine if his disability was long-term such that he would not be able to return to his job as fire marshall.

On April 26, 1996, the Board notified Hay that it had made an initial determination to disapprove his application for benefits. The Board provided him with the option of requesting an informal hearing with the Disability Committee of the Board or requesting a formal hearing before the full Board. On May 1, 1996, Hay requested an informal hearing before the committee, which was held on June 27, 1996. On June 28, 1996, the Board notified Hay that it had again disapproved his application for benefits, giving him the option of requesting a formal hearing before the Board. On August 29, 1996, Hay

filed a petition for review with the Board and requested a formal hearing, which was scheduled for January 30, 1997.

On January 29, 1997, pursuant to Dr. Sanders' advice that Hay get a second opinion, he was evaluated by Dr. Kling, a psychiatrist. Dr. Kling diagnosed him with major depression, anxiety, and a panic disorder. He noted in his records that "during the course of the interview I detect no ability to go back to function effectively at his previous job as a fire marshall. I believe his disability is related to exposure to murder/suicide trauma on the job in 1995 and 1996." Hay did not inform Dr. Kling that he and his wife received marriage counseling in 1991.

At the hearing before the Board on January 30, 1997, Dr. Kling testified that, in his opinion, Hay suffered overall depression associated with his position as fire marshall which could not be completely stabilized with medication and counseling and that he had become impaired and unable to perform his job. He further testified that:

> I was very impressed in talking with Mr. Hay that I didn't see any way of providing medication or counseling or conditioning. I didn't see any way that he could go back to that job. . . . [T]here's no doubt that events like the murder/suicide and other incidents happened on the job. Those were not home events, those were on the job events. And those were what went with his depression and his panic. Also, now that he's away from that job, his functioning has returned to basic healthy functioning. . . . It's my opinion that those were the precipitating events.

Hay, testifying on his own behalf at the hearing, testified that since he left his job as fire marshall on April 1, 1996, he has worked in the construction business, for the Missouri Highway Department, and as a plumber. He further testified that since he left his job as fire marshall, his life has been stress-free, for the most part. Hay and Dr. Kling were the only witnesses to testify at the hearing. Neither the Board nor the District presented any evidence at the hearing.

On April 25, 1997, the Board denied Hay's application for benefits. The Board found that:

Applicant's mental conditions are not work-related disabilities. At the hearing before the Board of Trustees, Applicant relied on his own testimony and that of Dr. Ian Kling, his psychiatrist. Based upon a thorough review of the case file, pleadings file, and testimony at the hearing, the Board specifically finds that Applicant's mental conditions are not the product of work-related stress and pressure. . . .

There is insufficient evidence to show that Applicant's conditions was [sic] incurred in the line of duty. . . .

The Board has considered and evaluated all the substantial and competent evidence and carefully assessed the credibility of each of the witnesses: the Applicant, Mr. William K. Hay, and Dr. Kling. The Board has used such evaluation and assessment in reaching its conclusion. . . .

Based upon the evidence presented, the Board cannot find and conclude that Applicant's alleged disability or incapacity, whether temporary or permanent, is a natural and proximate result of a personal injury or disease which arose out of and in the course of Applicant's actual performance of duty as an employee as provided in Section 70.600.3, RSMo [sic].

Hay filed a notice of appeal on April 24, 1998, appealing the Board's decision to the circuit court. On April 27, 1998, the circuit court reversed the decision of the Board, finding that Hay's inability to perform the job of fire marshall was the result of a permanent mental disability which was the natural and proximate result of the performance of his duties as fire marshall. The court found that the decision of the Board was not supported by competent and substantial evidence and that Hay was entitled to benefits pursuant to § 70.680.3.

This appeal follows.

### Standard of Review

 Our review is of the decision of the Board, not the decision of the trial court. *Anderson v. Missouri Local Gov't Employees Retirement Sys.*, 864 S.W.2d 372, 373 (Mo.App.1993). Our standard of review is

set out in § 536.140, which provides, in pertinent part, as follows:

2. The inquiry may extend to a determination of whether the action of the agency

(1) Is in violation of constitutional provisions;

(2) Is in excess of the statutory authority or jurisdiction of the agency;

(3) Is unsupported by competent and substantial evidence upon the whole record;

(4) Is, for any other reason, unauthorized by law;

(5) Is made upon unlawful procedure or without a fair trial;

(6) Is arbitrary, capricious or unreasonable;

(7) Involves an abuse of discretion.

3. Whenever the action of the agency being reviewed does not involve the exercise by the agency of administrative discretion in the light of the facts, but involves only the application by the agency of the law to the facts, the court may weigh the evidence for itself and determine the facts accordingly. The law applied by the agency as aforesaid may include the agency's own rules. In making such determination the court shall give due weight to the opportunity of the agency to observe the witnesses, and to the expertness and experience of the particular agency.

In our review, we must not substitute our judgment for that of the Board. *Paulson v. Missouri Dep't of Revenue*, 961 S.W.2d 63, 65 (Mo.App.1998). Rather,

we must ascertain whether the board could reasonably have made its findings and reached its decision on the basis of all the evidence before it. If its findings are clearly contrary to the overwhelming weight of the evidence, we must reverse and order further action as the case may require.

*Knapp v. Missouri Local Gov't Employees Retirement Sys.*, 738 S.W.2d 903, 912 (Mo. App.1987). "[Q]uestions arising as to uncontroverted or conceded facts are questions of law finally determinable by the courts." *Id.* at 912.

## I.

Although Hay alleges what he denominates as two claims of error in two points relied on, it is evident that the claim alleged in his second point is simply an extension of the claim alleged in his first point in that he is claiming in both that he presented undisputed, credible, competent, and substantial evidence to the Board that established that his permanent mental disability arose out of and in the course of the actual performance of his duty as fire marshall and, as such, he made a *prima facie* case for benefits. As part of this claim, he contends in his denominated Point II that, because the Board did not make a specific finding that the undisputed and unimpeached testimony and reports of his expert witnesses were incredible and unworthy of belief, it was not free to disregard it and was required to accept such testimony as true, the upshot being that he presented competent and substantial evidence supporting his application for benefits. Because we believe Hay's two points are essentially only one, we will address and discuss them together.

Section 70.680 governs claims by employees of covered political subdivisions of the state for benefits, such as Hay's claim here. It provides, in pertinent part, as follows:

1. Any member in service with five or more years of credited service who has not attained the age and service requirements of section 70.645 and who becomes totally and permanently physically or mentally incapacitated for his duty as an employee, as the result of a personal injury or disease, may be retired by the board upon written application filed with the board by or on behalf of the member; provided, that after a medical examination of such member made by or under the direction of a medical committee consisting of three physicians, one of whom shall be selected by the board, one by or on behalf of such member, and the third by the first two physicians so named, the medical committee reports to the board, by majority opinion in writing, that such member is physically or mentally totally incapacitated for the further performance of duty, that such in-

capacity will probably be permanent and that such member should be retired.

. . .

3. Any member in service who becomes totally and permanently physically or mentally incapacitated for his duty as an employee, as the natural and proximate result of a personal injury or disease which the board finds to have arisen out of and in the course of his actual performance of duty as an employee, may be retired by the board upon written application filed with the board by or on behalf of the member; provided, that after a medical examination of such member made by or under the direction of a medical committee consisting of three physicians, one of whom shall be selected by the board, one by or on behalf of such member, and the third by the first two physicians so named, the medical committee reports to the board, by majority opinion in writing, that such member is physically or mentally totally incapacitated for the further performance of duty, that such incapacity will probably be permanent, and that such member should be retired.

4. Upon disability retirement as provided in subsection 3 of this section, a member shall receive an allowance for life. . . .

§ 70.680. As to these disability claims, the claimant has the burden of establishing his or her entitlement to benefits. *Knapp,* 738 S.W.2d at 912. Thus, to make a *prima facie* case establishing his entitlement to benefits, Hay had the burden of showing that he was totally and permanently mentally disabled for his duty as fire marshall as the natural and proximate result of an on-the-job injury. *Knapp,* 738 S.W.2d at 912. "A 'natural result' is 'a condition which flows naturally and directly from the events or matter inquired about.' " *Anderson,* 864 S.W.2d at 374 (citation omitted). "A 'proximate result' is a condition which flows directly and immediately from the events and matters at issue." *Anderson,* 864 S.W.2d at 374 (citation omitted). If Hay did adduce credible, competent, and substantial evidence to make a *prima facie* case for benefits, as he contends, then the burden would have shifted to the Board and the District to show that either he was

not disabled or that his disability was not the proximate result of an employment injury. *Knapp,* 738 S.W.2d at 912.

■ The Board found, based on its review of the case file, pleadings, and testimony, that any mental disability from which Hay suffered was not the product of work-related stress and pressure and that his condition did not arise out of and in the course of the actual performance of his duty as fire marshall. In rendering its decision, the Board had before it Hay's case file containing the reports of Drs. Bregant, Sanders, and Geha. Those reports were required by § 70.680.3 to be made to the Board and, therefore, constituted public records and were admissible without further statutory aid and were not excludable as hearsay to establish the facts that they were required to recite. *Knapp,* 738 S.W.2d at 912.

In his report, Dr. Bregant stated that "[b]ased on the information available, I think this patient is permanently and totally disabled for his current occupation." Dr. Sanders agreed that Hay had a "serious disability because of psychiatric illness"; however, he recommended a second opinion to determine if his disability was permanent such that he could not return to his job as fire marshall. For his part, Dr. Geha agreed with Dr. Bregant that Hay was permanently disabled in his ability to manage the rigors and stresses of working in a fire department such that he was unable to perform his duty as fire marshall. The Board also had before it the report of the District's fire chief in which he stated that he believed that Hay's "disability occurred as the natural and proximate result of an injury or disease that arose out of and in the course of" his duty as fire marshall.

In support of his claim, Hay testified how his job as fire marshall mentally disabled him. And, because he had the burden of proof as to his mental disability, including the medical causation, nature, extent, and permanency, which are medical questions required to be established with scientific evidence, unless the record shows facts that lie within the realm of lay understanding, *Knapp,* 738 S.W.2d at 913–14; *Clevenger v. Labor and Indus. Relations Comm'n,* 600 S.W.2d 675, 676 (Mo.App.1980), he called Dr.

**302**

Kling, his psychiatrist, to testify as to these issues. In this respect, Dr. Kling testified that Hay suffered from depression and anxiety as a result of significant work stress associated with human trauma and emergency associated with his position as fire marshall. He further testified that his disability was permanent and that the stress of responding to emergency traumas was the precipitating factor leading to his disability. When asked if there were factors other than his job as fire marshall that could have caused Hay stress and anxiety, Dr. Kling testified that he questioned Hay about outside stresses and that he denied that there were any.

All four physicians agreed that Hay was mentally disabled. Three of the four, Drs. Bregant, Geha, and Kling, believed that his mental incapacitation was permanent such that he could not perform the necessary duties of a fire marshall. As to the fourth, Dr. Sanders did not express an opinion as to whether his mental disability was permanent and suggested a second opinion to determine its permanency. As to the cause of Hay's disability, Dr. Kling testified that Hay's permanent mental disability resulted from his job as fire marshall. Neither Drs. Bregant, Sanders, nor Geha expressed any opinion as to the cause of Hay's mental disability. There was no evidence presented to dispute or impeach Dr. Kling's testimony that Hay's mental disability was the result of his job as fire marshall.

■ While an administrative agency, such as the Board here, may base its decision on a finding of lack of credible testimony, "[a]n administrative agency may not arbitrarily ignore relevant evidence not shown to be disbelieved. Only if it makes a specific finding that undisputed or unimpeached evidence is incredible and is unworthy of belief may it disregard such evidence." *Knapp*, 738 S.W.2d at 913; *Missouri Church of Scientology v. State Tax Comm'n*, 560 S.W.2d 837, 843 (Mo. banc 1977). As to Dr. Kling's and Hay's testimony, the Board never made specific findings that their testimony was incredible or unworthy of belief. Instead, the Board simply noted that it had "carefully assessed the credibility of [Dr.

Kling and Hay and had] used such evaluation and assessment in reaching its conclusion." While we can infer that the Board did, in fact, judge the witnesses' credibility, it never made any specific finding as to whether they were credible. And, as to Drs. Geha, Bregant, and Sanders, other than noting that they had evaluated Hay, the Board did not make specific findings as to their credibility. Because the Board failed to make specific credibility findings as to the evidence upon which Hay relied to establish his *prima facie* case for benefits, this evidence is presumed credible and could not be ignored by the Board. *Knapp*, 738 S.W.2d at 913.

It could be argued that the Board made an implicit finding that Dr. Kling's and Hay's testimony was not credible in that it noted in its decision that it had assessed their credibility and then denied benefits. However, this is contrary to the holding in *Knapp*. In *Knapp*, three physicians reported to the Board that the applicant for benefits was permanently and totally disabled from his job but despite their undisputed medical opinions, the Board denied benefits. *Id.* at 906–07. Conceivably the Board and the applicant's employer could have argued in *Knapp* that, because the Board denied benefits, it implicitly found that the physicians were not credible. However, the *Knapp* court held that, in spite of the Board's denial of benefits, the Board was required to make a "specific finding" of credibility, impliedly rejecting the notion that the mere denial of benefits was tantamount to a specific finding of no credibility as to the witnesses in question. *Id.* at 913.

■ Following *Knapp*, in our review of the Board's decision here, we cannot infer that the Board made a finding of incredibility as to Dr. Kling and Hay because it denied him benefits. *Century State Bank v. State Banking Bd.*, 523 S.W.2d 856, 858–59 (Mo. App.1975). As instructed by *Knapp*, the Board here was required to make a "specific finding," not an implicit finding, that the testimony of Dr. Kling and Hay and the reports of the other three physicians were incredible or unworthy of belief, before it could disregard such evidence. *Knapp*, 738 S.W.2d at 913. Because the Board did not

make such a finding, the witnesses' testimony and reports were presumed credible, and the Board could not ignore them in its decision.

Having found that the Board could not ignore the evidence in question in making its decision to deny Hay benefits, the next issue for us to decide is whether this evidence constituted substantial and competent evidence supporting Hay's application for benefits.

 The weight to be given evidence is determined by looking at its weight in probative value, not its quantity or amount. *Osgood v. Worm World, Inc.*, 959 S.W.2d 139, 141 (Mo.App.1998) (citation omitted). Substantial evidence is "evidence that if true has probative force upon the issues; it includes only competent evidence, not incompetent evidence." *Knapp*, 738 S.W.2d at 913 (citation omitted). Competent evidence is that which is relevant and admissible evidence which is capable of establishing the fact in issue. *Knapp*, 738 S.W.2d at 913 (citation omitted).

 Here, as discussed, *supra*, all four physicians agreed that Hay had a mental disability, which three of them believed was permanent, such that he could not perform the necessary duties of a fire marshall. As to the cause of Hay's disability, Dr. Kling testified that his permanent mental disability was the result of his job as fire marshall, as did the District's fire chief. This evidence constituted substantial and competent evidence to make Hay's *prima facie* case for benefits.

 Inasmuch as Hay made a *prima facie* case for benefits, the burden shifted to the Board and the District to rebut his claim with substantial and competent evidence showing either that he was not permanently disabled or that his disability was not the proximate result of an employment injury or disease. *Knapp*, 738 S.W.2d at 913. And, as discussed, *supra*, this burden included showing the medical causation, nature, extent, and permanency of his disability, which are medical questions required to be determined with scientific evidence. *Knapp*, 738 S.W.2d at 913–14; *Clevenger*, 600 S.W.2d at 676. As such, the Board and the District were required to present expert medical testimony

to rebut Hay's *prima facie* case for benefits. The record reveals that they failed to do so. Thus, they failed to carry their burden.

The Board argues that Dr. Kling's testimony was not substantial and competent evidence to support Hay's application for benefits because it was disclosed at the hearing that he was not aware of the fact that Hay had attended three or four sessions of marriage counseling in 1991. The Board claims that if Dr. Kling had known of the marriage counseling, his opinion as to the cause of Hay's disability would necessarily have changed to reflect that factors other than his job as fire marshall caused Hay's disability. The Board has failed to articulate how this information was material to Dr. Kling's diagnosis of Hay such that it would have changed his opinion as to the cause of his mental disability. Despite the Board's attempts to characterize Hay's marriage counseling as counseling for psychological problems, we fail to see how a few sessions of marriage counseling, three years before the onset of Hay's symptoms of anxiety and depression relating to his job, could be construed as mental health counseling such that Dr. Kling's awareness of it would have had any impact on his opinion as to the cause of Hay's disability.

The Board in its brief also claims that Hay's testimony directly contradicted Dr. Kling's testimony as to Hay's lack of psychiatric treatment between September 1995 and February 1996 and his lack of stress since leaving his job as fire marshall such that Dr. Kling's testimony was not competent and substantial evidence supporting Hay's application for benefits. We fail to see how Hay's testimony, in this respect, contradicted that of Dr. Kling in any way. It is not clear whether Hay told Dr. Kling that he received psychiatric treatment between September 1995 and February 1996. Dr. Kling's notes on this subject read: "Notes per the psychiatrist are not legible, but apparently there was a consultation in June of 1995 through February 1996." Thus, Dr. Kling could have come to this conclusion from his own interpretation of the psychiatrist's notes. As for Hay's stress-free life since leaving his job as fire marshall, both Dr. Kling and Hay testi-

fied that his functioning had returned to normal since leaving his job and that he was experiencing less stress. They did not contradict each other on this point.

For the foregoing reasons, we find that the substantial and competent evidence supported Hay's application for benefits pursuant to § 70.680.3 and, thus, the decision of the Board denying him the same was not supported by competent and substantial evidence upon the whole record.

### Conclusion

The judgment of the circuit court reversing the decision of the Board denying Hay benefits is affirmed.

All concur.