James RANSBURG, Appellant,

v.

**GREAT PLAINS DRILLING,**
**Respondent.**

**No. WD 56655.**

Missouri Court of Appeals,
Western District.

Jan. 11, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 29, 2000.

Peery Apartments *or any comparable facility,* not just to Peery Apartments.

Allan Fanning, Kansas City, for Appellant, Appellant.

Kip Kubin, Overland Park, for Respondent, Respondent.

Before Presiding Judge LOWENSTEIN, Judge LAURA DENVIR STITH and Judge RIEDERER.[1]

HAROLD L. LOWENSTEIN, Judge.

## FACTS

This appeal is brought from The Labor and Industrial Relations Commission decision affirming the award of the Administrative Law Judge in a workers' compensation case. The claimant, James Ransburg, is the appellant. His claim was for a permanent total disability award against his employer and the Second Injury Fund. The final award gave him a rating of fifty-percent permanent partial disability. The primary questions raised in this court concern the extent of Ransburg's disability, and the extent of the Second Injury Fund's liability for benefits. Due to the complicated nature of the facts and several dates involved, a chronology of the events and findings of facts may prove helpful to this court's analysis.

■ This claim was initially filed against the employer/insurer on November 1, 1993. The claim was then amended to add the Second Injury Fund as a party on October 19, 1994. "The Second Injury Fund is liable if 'previous disability or disabilities, whether from compensable injury or otherwise, and the last injury together result in total and permanent disability.'" *Smith v. ConAgra, Inc.*, 949 S.W.2d 917, 920 (Mo.App.1997). For reasons unknown and not clarified by appellant, appellant did not provide the Second Injury Fund notice of the medical experts' depositions as they were being taken, and the depositions were, therefore, excluded from evidence against the Second Injury Fund with one exception. The only evi-

---

1. After submission, Judge Riederer retired from the court.

dence admitted against the Fund was the second deposition of Dr. Abella that took place on October 9, 1996, and the deposition of Michael Dreilling, employer/insurer's vocational expert.

Ransburg was injured on February 12, 1992, while working for Great Plains Drilling when he fell 15 feet down a pier hole and landed on an air drill, striking his back and neck. The employer/insurer has paid $32,139.02 in weekly benefits over a period of 76 weeks, as well as medical expenses of $56,139.02.

Immediately after the accident, the appellant was treated by Dr. Cochran, and then referred to Dr. Boylan at Rockhill Orthopedics. Dr. Boylan released appellant to return to work on June 13, 1992. He continued to work until he was in too much pain and eventually ceased working in December of 1992. Appellant has not been employed or performed any type of work since that time.

Appellant was later sent to Dr. Drisko, who treated the duration of his work injuries. Dr. Drisko ultimately performed low back surgery and a fusion in January of 1993, as well as a right rotator cuff surgery for shoulder pain in April of 1993. At some point after April of 1993, appellant went to his family physician, Dr. Abella, complaining of neck pain. Dr. Abella referred appellant to Dr. Schoolman, who later performed neck surgery.

Appellant testified that his past medical history included a back strain while operating a jackhammer in 1976, which resolved with no problems. This muscular injury was in Kansas and resulted in a rating of 10% to the body. He also testified to suffering a gunshot wound to his left side, with the bullet exiting near his armpit, also resolving with no problems. He additionally had fractured ribs in 1987.

Appellant testified that he receives Social Security disability benefits of $734.00 per month, and union pension benefits of $507.00 per month, all tax-free. Appellant testified that he had not tried to seek employment since December of 1992 and that he had no motivation to attempt to go back to work in a sedentary position and jeopardize the tax-free benefits he currently receives. He further testified that he dropped out of school in the 7th grade and has since worked as a driver, grocery store clerk, general laborer and a construction worker. He is over sixty years old. Additional facts will be supplied in the points relied on.

The summary of the extensive medical and vocational rehab evidence is as follows: Dr. Prostic, who examined appellant for the purpose of a rating, gave a percentage of permanent disability of 50% to the body as a whole (15% neck, 15% shoulder, 30% low back). He concluded the appellant was capable of sedentary work. Dr. Drisko opined permanent partial disability of 28–30% (10% right shoulder, 18–20% back), and also said appellant was capable of sedentary work. Dr. Abella, Ransburg's family physician, rated him as having 35% disability in the neck, 35% to lumbar spine, and 10% to right shoulder, and capable of sedentary work. Michael Dreiling, the employer and insurer's vocational rehab witness testified appellant was capable of sedentary, entry level work, such as light packing. Mary Titterington, Ransburg's vocational counselor felt he was permanently disabled.

The Commission found that appellant has a permanent partial disability of fifty percent (50%). It held the Second Injury Fund was not liable. In essence, appellant's basic claim on appeal is that the combination of appellant's accident on February 12, 1992, the noncompensable injuries noted above, and the previous Kansas Workers' Compensation claim in 1976 concerning his low back, result in permanent total disability of the appellant, rather than the 50% permanent partial disability award of the Commission.

## STANDARD OF REVIEW

The standard of review is set forth in *Davis v. Research Medical Ctr.*, 903 S.W.2d 557, 571 (Mo.App.1995).

[T]he standard of review of an award of the Commission is as follows. The reviewing court may not substitute its judgment on the evidence for that of the Commission. The weight of the evidence and the credibility of witnesses are ultimately for the Commission. The court applies a two-step process designed to determine whether the Commission could have reasonably made its findings and award upon consideration of all the evidence before it. In the first step, the court examines the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the record contains sufficient competent and substantial evidence to support the award. If not, the Commission's award must be reversed. If there is competent and substantial evidence supporting the award, the court moves to the second step, where it views the evidence in the light most favorable to the award, but must consider all evidence in the record, including that which opposes or is unfavorable to the award, take account of the overall effect of all of the evidence, and determine whether the award is against the overwhelming weight of the evidence. In doing so, it takes into consideration the credibility determinations of the Commission and, if those determinations as to witnesses who gave live testimony before the ALJ are different than those made by the ALJ, it also considers the ALJ's credibility findings as well as the reasons, if any are given, why the Commission differed with those findings. Findings and awards of the Commission which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding on the court and fall within the court's province of independent review and correction where erroneous. And, where the findings of ultimate fact are reached not by a process of natural reasoning from the facts alone, but rather by application of law, it is a conclusion of law and subject to reversal by the court.

In summary, there are two standards of review of awards from the Commission. The standard for questions of law allows the court to examine issues and make holdings as if it were the court of origin, while the standard for questions of fact requires the reviewing court to look at the evidence which supports the award and find whether there is sufficient and competent evidence to support it. If such evidence is found, it must then look at all of the evidence and determine if the award is plainly against the weight of that evidence. The Workers' Compensation Law should be broadly interpreted in a liberal manner in favor of the employee. However, the employee has the burden to prove all elements of his or her case to a reasonable probability. *Cooper v. Medical Ctr. of Independence*, 955 S.W.2d 570, 574 (Mo.App. 1997).

## POINTS RELIED ON

### I. EMPLOYER/INSURER LIABILITY

"Total disability" is defined by § 287.020.7, RSMo 1994, which states it "shall mean [the] inability to return to any employment and not merely mean inability to return to the employment in which the employee was engaged at the time of the accident." "To determine if claimant is totally disabled, the central question is whether, in the ordinary course of business, any employer would reasonably be expected to hire claimant in his present physical condition." *Sifferman v. Sears, Roebuck & Co.*, 906 S.W.2d 823 (Mo.App. 1995) citing *Massey v. Missouri Butcher & Cafe Supply*, 890 S.W.2d 761, 763 (Mo.App. 1995).

Appellant's first three arguments challenge the substance and competence of the evidence relied upon by the Commission in determining appellant is only permanently partially disabled. Appellant argues that there were no specific findings

by the Commission that appellant's evidence was not credible, that the evidence of total disability is undisputed, and that appellant should be found permanently totally disabled as a matter of law.

Appellant contends that all three of these arguments are based on undisputed evidence that are questions of law. There is clearly controverted evidence apparent by the experts' ratings of appellant's disability. As pointed out in both Respondents' briefs, the case appellant relies on, *Hay v. Schwartz*, 982 S.W.2d 295 (Mo.App. 1998), is clearly distinguished from the case at bar in that there was no undisputed evidence in Hay.

In Hay, the court held that the Commission must make specific findings that certain evidence presented by claimant was not credible only because there was no disputed evidence. The agency made a finding contrary to the evidence, and, therefore, the need for the agency to specify what it found incredible was warranted. In the case at hand, there is disputed evidence pertaining to appellant's degree of disability. Therefore, Hay does not apply.

The record shows that three medical experts, and two vocational experts' testimony or depositions were admitted into evidence. Appellant's vocational expert was the only one who testified that the appellant, based on his physical restrictions, age, education, and upper extremity disability, was unable to find work in the open labor market. The four other experts all testified that while appellant was restricted and could certainly not go back to labor work, he could do some sort of light sedentary work.

Further, the medical experts' percentage ratings of disability were as follows: Dr. Drisko, respondent's expert and the employee-authorized treater, rated the appellant at 28%–30% permanent partial disability for the low back and shoulder combined; Dr. Prostic, appellant's expert, rated the appellant at 50% permanent partial disability; and Dr. Abella, appellant's personal physician gave two ratings. The first was given on June 24, 1996, and was rated at a 65% permanent partial disability. Then on June 26, 1996, at appellant's attorney's request, Dr. Abella authored another report and rating that was itemized after additional information was given to him by appellant's attorney. This additional information was of a past low back injury that resulted in a Workers' Compensation Claim in Kansas in 1976, and also that appellant had been shot in the left side. The result of Dr. Abella's second rating report was that appellant's disabilities were as follows: 10% pre-existing disability to mid-back from 1976 work related incident; 35% permanent partial disability to 1996 cervical fusion; 30% permanent partial disability to low back and 15% to right shoulder from the February 12, 1992, accident; and 10% permanent partial disability to left shoulder presumably from gunshot. This itemized rating equals 100% disability.

This court finds it odd that the only medical expert of three who found a 100% disability found 100% disability only after a second rating that included the recent knowledge of two events that had both happened well before the first rating occurred. The appellant did not indicate to any of the three medical experts the existence of a previous back injury while giving his medical history during the examinations, even though all three doctors specifically asked this question. If the previous injuries were not apparent upon examination in 1994 to three experts, the second rating of Dr. Abella is not sufficiently competent and substantial evidence to reverse the Commission's finding of 50% permanent partial disability.

"This court will uphold a finding of the Commission consistent with either of two conflicting medical opinions if supported by competent and substantial evidence upon the record." *Sifferman*, 906 S.W.2d at 826 citing *Jones v. Jefferson City School Dist.*, 801 S.W.2d 486, 490

(Mo.App.1990). "The Commission is not bound by the expert's exact percentages and is free to find a disability rating higher or lower than that expressed in medical testimony." *Id.*

Further, "[t]he determination of a specific amount or percentage of disability awarded to a claimant **is a finding of fact** within the province of the Commission, and this court will not substitute its judgment for that of the Commission even if this court would have made a different initial conclusion." *Sifferman,* 906 S.W.2d at 826 citing *Jones v. Jefferson City School Dist.,* 801 S.W.2d 486, 489 (Mo.App.1990). Under the standard of review, the court can not change a finding of fact where there is sufficient and competent evidence to support the award and the award is not plainly against the weight of the evidence, which is not the case here. Appellant's points 1 through 3 are denied.

Appellant argues in his next three points that the Commission improperly used evidence concerning his pension and social security benefits in determining the issue of total disability. While it is true that § 287.270, RSMo 1994 states that no benefits derived from any other source may be considered to determine compensation due, the Commission clarified that the evidence was not used in that manner.

Point 4 of appellant's brief argues that because appellant qualified for disability under his pension and social security benefits he, by operation of law, automatically qualified for permanent total disability. Appellant cites no authority stating there are equivalent tests for these separate types of disability ratings, this court finds no authority stating such, nor does the record reflect any facts supporting such a claim. Therefore, the point is denied.

Points 5 and 6 argue that the Commission used appellant's pension and welfare benefits as credits against the amounts due under the award, or alternatively, to bar the appellant's right to compensation because of the equitable doctrine of waiver, estoppel, election and contract.

The only consideration the Commission gave to the pension and welfare benefits was to determine that appellant, through his own testimony, had no compulsion or motivation to attempt to go back to work, despite medical and vocational experts' opinions that the appellant is able to be employed in a light sedentary capacity. Appellant further admitted the current benefits he receives affect his attempts to find a job, and he has not even attempted to seek employment since December of 1992. The benefits were not considered by the Commission in determining the compensation due, they were only considered to determine if the appellant could, or had even attempted to gain employment. "The Commission may consider all of the evidence, including the testimony of the claimant, and draw all reasonable inferences in arriving at the percentage of disability." *Sifferman,* 906 S.W.2d at 826 citing *Doria v. Chemetron Corp.,* 784 S.W.2d 323, 325 (Mo.App.1990). Point 5 is denied.

Likewise, Point 6 is also denied as compensation was awarded in the form of permanent partial disability, leaving no merit to the argument that appellant's rights to disability benefits are barred by election, waiver, estoppel or contract.

Points 7 through 9 of Appellant's brief challenge the sufficiency and competency of the evidence in the record supporting the Commission's finding that he is only permanently partially disabled, rather than permanently totally disabled. The court finds these arguments repetitive and without merit as previously discussed in addressing appellant's points 1 through 3 above.

Appellant's point 10 claim for an alternative award of *temporary* total disability is procedurally barred as it was not raised in front of the Commission and is improperly raised before the Court of Appeals for the first time. There is no record of this issue

being raised previously in the legal file, and, therefore, the issue has not been properly preserved for appeal. *Erickson v. Aaron's Automotive Products, Inc.*, 967 S.W.2d 661, 664 (Mo.App.1998).

■ Point 11 of Appellant's brief argues the Commission's ruling that Dr. Abella's bill for $256.00 and the K.C. Neurological Clinic's bill for $510.00 should have been paid by the employer/insurer. Although the respondent's brief fails to address this point, the Commission quoted "where an employee submits doctor bills, but not the medical records, such bills are properly excludable because the employee has failed to show that the bills relate to the professional services rendered...." *Cahall v. Riddle Trucking, Inc.*, 956 S.W.2d 315, 322 (Mo.App.1997).

Without the submission of the medical records and dates of treatment pertaining to the bills, it can not be determined whether Dr. Abella's bills are for work related injuries, or for other treatment Dr. Abella testified to performing on appellant. Further, due to the lack of medical records proving otherwise, the Commission found that the neurology bills were for the 1989 gunshot accident rather than the work related accident of February 12, 1992. Under the standard of review, the Commission's holding that the employer/insurer is not liable for the bills must be affirmed.

Overall, in response to appellant's arguments against the employer/insurer, respondent correctly cites *Sifferman v. Sears, Roebuck & Co.*, 906 S.W.2d 823 (Mo.App.1995) which is the leading case in this instance. "The award of the Commission may be overturned only if it is not supported by substantial evidence or if it is clearly contrary to the overwhelming weight of the evidence." This court, viewing the record in the light most favorable to the findings of the Commission, must determine whether the Commission could have reasonably made its finding and award. *Sifferman*, 906 S.W.2d at 825 citing *Johnson v. City of Duenweg Fire Dept.*, 735 S.W.2d 364, 366 (Mo. banc

1987). The court, despite the best efforts of Ransburg's counsel, finds that the Commission's award is supported by substantial evidence that is not clearly contrary to the weight of the evidence.

## II. SECOND INJURY FUND LIABILITY

■ The findings and conclusions of the Commission awarding appellant 50% permanent partial disability make the second tier of this appeal a controversy that does not concern the appellant, and, therefore, need not be addressed. Appellant does not have a complaint in this series of points, since the first tier of this appeal has not awarded him any additional compensation. Under Rule 84.13(b), this court can not reverse the judgment, as it was not error committed against the appellant. Even if there was error in not admitting evidence against the Fund, no reversal could be made, as the Fund is the respondent rather than the appellant in this case. The responsibility for medical and disability payments for the fifty-percent permanent partial award is a question between the employer-insurer and the Second Injury Fund. Therefore, this point in Ransburg's appeal is denied.

## CONCLUSION

The award of the Labor and Industrial Relations Commission was supported by substantial and competent evidence that was not clearly contrary to the overwhelming weight of the evidence. Therefore, the award is affirmed.

All concur.