Bill RANA, Appellant,

v.

LANDSTAR TLC, Respondent.

No. WD 58752.

Missouri Court of Appeals,
Western District.

May 15, 2001.

Steven J. Streen, Kansas City, for Appellant.

William F. Ringer, Kansas City, for Respondent.

Before SPINDEN, C.J., and EDWIN H. SMITH and NEWTON, JJ.

EDWIN H. SMITH, Judge.

Bill Rana appeals from the decision of the Labor and Industrial Relations Commission (Commission) denying his workers' compensation claim for benefits for future medical treatment, pursuant to § 287.140.1,[1] and awarding benefits for permanent partial disability (PPD), pursuant to § 287.190. The appellant suffered work-related injuries on October 12, 1996, when he slipped and fell while exiting his company truck.

The appellant raises two points on appeal. In Point I, he claims that the Commission erred in denying him benefits for future medical treatment and care because its decision was not supported by substantial and competent evidence, and misapplied the law. In Point II, he claims that the Commission erred in awarding him benefits for PPD based upon a disability rating of only 7.5 percent of the body as a whole because its decision was not supported by substantial and competent evidence; was against the weight of the evidence; and misapplied the law.

We affirm in part, and reverse and remand in part.

### Facts

The appellant was a long-haul truck driver for Landstar TLC, which is located in St. Clair, Missouri. On October 12, 1996, he was delivering a load for his employers in Atlanta, Georgia. At the delivery site, he slipped and fell on a broken step, while alighting from his truck. He struck the steps, injuring his left shoulder, neck, and lower back. As his driving partner, Teresi Herring, helped him climb back into the truck, he began having muscle spasms. At this point, Herring took him to the emergency room of Rockdale Hospital in Conyers, Georgia. He was treated and released, with instructions to follow up with his own physician when he returned home. Upon returning to St.

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

Clair, Landstar sent him to see Dr. Eljaiek. After seeing the appellant on October 17, 1996, Dr. Eljaiek prescribed medication, recommended physical therapy, and excused the appellant from work. When the appellant finally returned home to Erie, Pennsylvania, he began seeing Dr. Nick Stefanovski, for further treatment.

Dr. Stefanovski, an orthopedic surgeon, first saw the appellant on October 31, 1996, and diagnosed him as having an impingement syndrome of the left shoulder and low-back strain. In treating the appellant, he prescribed medication and ordered physical therapy. In addition, he recommended that the appellant be given a subacromial steroid injection, but the appellant refused because "he is deathly afraid of needles." At the second visit on December 3, 1996, Dr. Stefanovski wanted to conduct an MRI to rule out a rotator cuff tear in the appellant's left shoulder. The appellant refused this treatment also because he is claustrophobic. Dr. Stefanovski then referred the appellant to a neurosurgeon, Dr. Steven Gilman, for an examination of his cervical spine.

Dr. Gilman first saw the appellant on December 10, 1996. He noted significant arthritis, with spondylosis at C3–4, as well as the left shoulder impingement, and ordered physical therapy. The appellant had follow-up visits with Dr. Gilman on January 21, 1997, and March 25, 1997. At his last visit, Dr. Gilman released the appellant from his care, finding that he was doing much better and no longer had much neck pain, but that he would see the appellant on a "return as needed" basis. He further found that the appellant could return to work once Dr. Stefanovski determined that his shoulder injury would not be a problem.

Both during and after his visits with Dr. Gilman, the appellant continued to see Dr. Stefanovski and attend physical therapy sessions, although, of the 29 scheduled sessions, he missed eleven for various reasons. At the appellant's February 20, 1997, visit, Dr. Stefanovski found that he was doing much better and could return to light-duty work. However, Landstar refused, choosing instead to continue paying him weekly temporary total disability benefits. In March 1997, Dr. Stefanovski noted that the physical therapy could be discontinued, as the appellant was doing the specified exercises at home. Because he continued to do better, Dr. Stefanovski told the appellant at his April 22, 1997, visit that he could return to work beginning on May 1. He then scheduled a follow-up visit in four months. At his last visit on August 28, 1997, Dr. Stefanovski noted that the appellant continued to have left shoulder pain, but that he was willing to "put up with" the residual pain at that time. The doctor further noted that he thought that the appellant would slowly improve in the future, but that if he did not, he would have to have an injection, and, if the problem ended up being chronic and painful, an arthroscopic decompression would be considered. Landstar did not authorize any further visits with either Dr. Stefanovski or Dr. Gilman.

On May 1, 1997, rather than return to work at Landstar, the appellant opted to voluntarily separate from employment, and went to work for PST as an over-the-road truck driver. He was employed at PST from approximately May 1997 through November 1, 1997, when he voluntarily separated from them. He was unemployed from that time until approximately January 1, 1998, when he began working as a driver for Florilli. As a condition of employment with Florilli, the appellant underwent and passed a Department of Transportation physical, with the examining physician finding no need for any med-

ical restrictions. He remained employed with Florilli at least until July 1999.

After leaving Landstar, the appellant continued to see several doctors concerning his work-related injuries. In October 1997, at the request of his attorney, he was rated by Dr. P. Brent Koprivica for PPD. Dr. Koprivica rated the cervical injury at ten percent, the impingement syndrome of the left shoulder at five to ten percent, and the lumbosacral sprain at five percent. Because of the multiplicity of conditions, he rated the overall PPD at 25 to 30 percent attributable to the injuries sustained on October 12, 1996. Dr. Koprivica recommended ongoing conservative management, including anti-inflammatory medications and periodic monitoring. He also directed the appellant to continue his home exercises.

On May 4, 1998, Landstar had Dr. Philip George of the St. Louis Orthopaedic Group, Inc., examine and rate the appellant. Dr. George found that the appellant's range of motion of the cervical spine was restricted by roughly 30 percent in all planes. He further stated that the impingement maneuver was slightly positive on the left shoulder, x-rays of the cervical spine showed degenerative disc disease at C3–4, and x-rays of the left shoulder showed significant post-traumatic arthrosis at the acromioclavicular (AC) joint. His diagnosis was: cervical strain; a sprained left shoulder; cervical spondylosis (advanced degenerative disc disease); and post-traumatic arthrosis, left AC joint. Dr. George suggested permanent restrictions against overhead work and concluded that, because he had reached maximum medical improvement, the appellant could return to his regular job as a truck driver. Dr. George, in his evaluation of the appellant, stated:

It is my opinion that the injury of October 12, 1996, aggravated a previously existing degenerative condition in both the neck and shoulder. Probably one-half of that was due to the trauma in question and one-half was due to previously existing degenerative changes. Mr. Rana has some permanent partial physical disability of the body as a whole with regard to his neck and left shoulder as a result of his left shoulder problems ... I do not feel he is currently in need of active orthopedic treatment. No return appointments were scheduled. No medication was prescribed.

In a supplemental report issued the same day, Dr. George further concluded that the appellant had 20 percent PPD of the body as a whole, with respect to his cervical spine, one-fifth of which was due to the industrial trauma suffered in the fall, the remainder being attributable to an existing degenerative change. Additionally, he concluded that the appellant had a further 15 percent PPD of the left shoulder as a result of his post-traumatic arthrosis of the AC joint, of which one-fifth was due to the trauma of October 1996, with the remainder being attributable to the pre-existing degenerative change.

The appellant's shoulder began bothering him again such that, on November 5, 1998, he returned to Dr. Stefanovski on his own. He requested a return to physical therapy, and the doctor concurred. However, Landstar denied this treatment. As a result, Dr. Koprivica was asked for an addendum regarding additional treatment, which he completed on August 21, 1999. His letter indicated that he was in agreement with Dr. Stefanovski regarding additional medical care and treatment. He stated that "[i]t is a characteristic of chronic impingement syndromes that an individual will develop a decrease in range of motion as well as strength over time with a waxing and waning course." He also found that the appellant was still a

potential candidate for more injections or decompression surgery.

On November 1, 1996, the appellant filed a claim for compensation with the Missouri Department of Labor and Industrial Relations, Division of Workers' Compensation, claiming injury to his back, with pain in his left arm, shoulders, and neck. The respondent filed its answer on July 16, 1997. The case was heard on January 25, 2000, before the Honorable R. Carl Mueller, Jr., an administrative law judge (ALJ) of the Division of Workers' Compensation in Kansas City, Missouri, with the appellant raising four issues: (1) that the respondent had defended the matter on unreasonable grounds, in contravention of § 287.560; (2) that he was entitled to temporary total disability for the period of November 1, 1998, to December 31, 1998; (3) that he was entitled to future medical care and treatment; and (4) that he was entitled to PPD. The only live testimony at the hearing consisted of the appellant and Herring. All of the expert testimony by the doctors, both for the appellant and the employer, was in the form of medical records, reports and letters, which were submitted by each party in lieu of live testimony. Specifically, the appellant offered the medical records of Dr. Stefanovski and Dr. Gilman; a letter report from Dr. Stefanovski dated December 30, 1998; and a rating report from Dr. Koprivica. The employer offered the rating report of Dr. George, dated May 4, 1998, and the appellant's physical therapy records from Hamot Physical Therapy Centers.

On February 16, 2000, the ALJ issued his findings of fact and rulings of law, finding with respect to the issues raised, that: (1) the appellant's allegation that the respondent had defended on unreasonable grounds was totally without merit, and was summarily denied; (2) the competent and substantial evidence indicated that the appellant was employed full time during the specified dates and, thus, was not entitled to temporary total disability; (3) there was no evidence of any need for future medical care and treatment; and (4) based upon Dr. George's evaluation, the appellant had a PPD of 7.5 percent of the body as a whole referable to the injuries to his cervical spine and left shoulder, which resulted from the work-related accident of October 12, 1996, and, thus, awarded PPD benefits of $8,061.60.

The appellant filed an application for review with the Commission on March 3, 2000, attacking the ALJ's decisions as to the four issues addressed. In his application for review, the appellant requested specific findings regarding the following factual issues:

1. Did the Employe[e] receive a permanent partial disabling injury to his low back as well as his cervical spine and left shoulder[?]

2. Is the Employee in need of future medical aid, including but not limited to, additional physical therapy, possible future surgery and pain medication[?]

3. Was the Employer's denial of additional medical aid reasonable[?]

4. Did Employee miss four to eight weeks of work in late 1998 because of his injuries[?]

5. Had Employee ever had symptoms, problems, pain, loss of work or any other difficulty due to any pre-existing physical conditions to his cervical spine, left shoulder or low back[?]

The respondent filed its answer on March 7, 2000. On May 30, 2000, the Commission[2] issued its "Final Award Allowing

---

**2.** We note that even though this decision was made by only a two-member commission,

Compensation," affirming and adopting the award, findings, and conclusions of the ALJ. As to the appellant's request for specific additional findings, the Commission found:

1. No. There is insufficient evidence in the record to convince the Commission that employee suffered a permanent partial disability from the work accident on October 12, 1996, other than to the cervical spine and left shoulder for which permanent partial disability was awarded.

2. No. For the same reasons cited by the administrative law judge, the Commission is unconvinced that employee would benefit from additional medical treatment. It is significant that when employee was presented with the opportunity to receive treatment, he was not entirely cooperative. He did not appear for all his physical therapy appointments even though he was not working at the time ... He also refused any kind of injection ... As of May 1, 1997, employee was found to have full range of motion and strength and capable of returning to work without restrictions ... In fact, that same month employee returned to full time work. Dr. George's report of May 4, 1998, substantiates that employee is not in need of further treatment.

3. Employee has failed to establish that employer unreasonably refused to provide necessary medical aid to cure or relieve the effects of the work injury.

4. Employee was unable to provide the dates that he missed work in 1998 purportedly due to his work injury. He had no medical evidence excusing him from work for any particular time frame in 1998. As stated previously, there is evidence that employee reached maximum medical improvement in 1997. Employee failed in his burden of proving that he is entitled to additional temporary total disability during 1998.

5. Dr. George reported that X-rays of the cervical spine revealed long-standing degenerative disc disease at C3–4, marked narrowing of the disc space, adjacent osteophytosis, and sclerosis of the end plates ... Dr. George's examination and review of X-rays revealed that employee suffered from preexisting degenerative disease in the cervical spine (neck) and shoulder ... While employee's testimony indicates that these conditions were asymptomatic, they nevertheless preexisted the work accident. The administrative law judge's finding that employee aggravated preexisting conditions in his neck and shoulder is supported by the record.

This appeal follows.

## Standard of Review

Our review of the Commission's decision in a workers' compensation case is limited. *Kirksville Publ'g Co. v. Div. of Employment Sec.*, 950 S.W.2d 891, 894 (Mo.App.1997). The findings of the Commission, as to the facts, if supported by competent and substantial evidence, absent fraud, are conclusive. § 287.495.1, RSMo Supp.1998. In this regard, we will defer to the Commission on issues concerning credibility and the weight to be afforded to conflicting evidence and testimony. *Smith v. Climate Eng'g*, 939 S.W.2d 429, 431 (Mo.App.1996). As to the weight to be given to an expert opinion, it is within the sole discretion of the Commission to make this determination, which cannot be reviewed by this court. *Id.* However, "[f]indings and awards of the

rather than the normal three-member commission, this is nonetheless a sufficient number to constitute a quorum and to render a decision. § 286.010, RSMo Supp.1995.

Commission which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding on [us] and fall within [our] province of independent review and correction where erroneous." *Davis v. Research Med. Ctr.,* 903 S.W.2d 557, 571 (Mo.App. 1995).

■ We will disturb the decision of the Commission only if we find that: (1) it acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or, (4) the record lacks sufficient competent evidence to warrant the making of the award. § 287.495.1, RSMo Supp.1998. In determining whether the Commission's findings and award are supported by the record, we apply the two-step process set forth in *Davis,* 903 S.W.2d at 571. In the first step, we examine the whole record, "viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the record contains sufficient competent and substantial evidence to support the award. If not, the Commission's award must be reversed." *Id.* If we find that there is sufficient competent evidence to support the award, we then move to the second step, where we:

> view[ ] the evidence in the light most favorable to the award, but must consider all evidence in the record, including that which opposes or is unfavorable to the award, take account of the overall effect of all of the evidence, and determine whether the award is against the overwhelming weight of the evidence.

*Id.* However, in cases where the Commission adopts the findings and award of the ALJ before whom the witnesses testified, as in our case, the resulting consistency as to credibility determinations is a strong reason to uphold the award on appeal. *Id.* Furthermore, "[w]here the Labor and In-

dustrial Relations Commission's award attaches and incorporates the ALJ's award and decision, this court considers the findings and conclusions of the Commission as including the ALJ's award." *Cochran v. Indus. Fuels & Res., Inc.,* 995 S.W.2d 489, 492 (Mo.App.1999) (citation omitted). Therefore, in our discussion, *infra,* all references to the Commission's findings will refer not only to those findings made specifically by the Commission, pursuant to the request of the appellant, but also to those findings of the ALJ adopted by the Commission.

## I.

In Point I, the appellant claims that the Commission erred in denying his workers' compensation claim for benefits for future medical treatment, pursuant to § 287.140.1, because its decision was not supported by substantial and competent evidence, and it misapplied the law.

### A. Sufficiency of the Evidence to Deny Benefits for Future Medical Care and Treatment

In our case, the appellant requested benefits for future medical care and treatment for the work-related injuries to his left shoulder, neck, and lower back, including physical therapy, over-the-counter medication, and, if necessary, surgery. In denying his request, the Commission found that the appellant had fully recovered and was not currently in need of medical care and treatment as a result of his work-related injuries of October 12, 1996, based on the appellant's conduct, the passage of time, the medical opinion of Dr. George, and the medical records of his treating physicians, Dr. Stefanovski and Dr. Gilman. The appellant argues that the Commission's decision was not supported by substantial evidence, such that it erred in

denying his request for future medical treatment benefits. We disagree.

Under the Missouri Workers' Compensation Act, employers are "to furnish compensation ... for personal injury or death of [their] employee by accident arising out of and in the course of his employment. . . ." § 287.120.1. The parties in this case do not dispute the fact that the appellant's injuries arose "out of and in the course of his employment" such that they were work-related, entitling him to workers' compensation benefits thereon. The issue is whether his compensation award should have included benefits for future medical care and treatment.

As to a claim for workers' compensation based on a PPD, such as in our case, the Commission's award may and often does include an allowance for the expense of reasonable future medical care and treatment. *Dean v. St. Luke's Hosp.*, 936 S.W.2d 601, 603 (Mo.App.1997) (citation omitted). Future medical care and treatment are provided for in § 287.140.1, which states:

In addition to all other compensation, the employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment, including nursing, custodial, ambulance and medicines, as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury.

This statute has been interpreted to mean that a claimant is entitled to compensation for care and treatment "which gives comfort [relieves] even though restoration to soundness [cure] is beyond avail." *Williams v. A.B. Chance Co.*, 676 S.W.2d 1, 4 (Mo.App.1984) (bracketed language in original). Of course, the appellant bears the burden to prove an entitlement to benefits for such care and treatment. *Dean*,

936 S.W.2d at 603 (*citing Meilves v. Morris*, 422 S.W.2d 335, 339 (Mo.1968)).

■ To prove an entitlement to workers' compensation benefits for future medical care and treatment, an employee must show something more than a possibility that he will need such medical care and treatment. *Id.* However, the claimant is not required to present evidence demonstrating with absolute certainty a need for future medical care and treatment. *Id.* (*citing Sifferman v. Sears, Roebuck & Co.*, 906 S.W.2d 823, 828 (Mo.App.1995)). Rather, it is sufficient for the claimant to show his/her need for additional medical care and treatment by a "reasonable probability." *Id.*; *Mathia v. Contract Freighters, Inc.*, 929 S.W.2d 271, 277 (Mo.App. 1996) (*citing Sifferman*, 906 S.W.2d at 828). " 'Probable' means founded on reason and experience which inclines the mind to believe but leaves room for doubt." *Sifferman*, 906 S.W.2d at 828 (citation omitted). "In determining whether this standard has been met, the court should resolve all doubt in favor of the employee." *Dean*, 936 S.W.2d at 604 (citations omitted). "[A] claimant is not required to present evidence of specific medical treatment or procedures which will be necessary in the future in order to receive an award for future medical care." *Polavarapu v. Gen. Motors Corp.*, 897 S.W.2d 63, 66 (Mo.App.1995). Such a requirement could "put an impossible and unrealistic burden" upon the claimant. *Bradshaw v. Brown Shoe Co.*, 660 S.W.2d 390, 394 (Mo. App.1983). The only requirement is that the finding of a need for future medical care and treatment be shown to be reasonably probable and be founded upon reason and experience. *Sifferman*, 906 S.W.2d at 828.

■ In denying the appellant's claim for benefits for future medical care and treatment, the Commission relied, in part, on

the fact that the appellant had failed to attend eleven of his twenty-nine scheduled physical therapy sessions. In this regard, the Commission found that, because the appellant did not regularly attend his prescribed physical therapy appointments, his "request for physical therapy more than three years subsequent to [his] injury ... begs credulity." The appellant attempts to characterize these missed physical therapy sessions as a "red herring" because "there is no evidence that the missed sessions had any negative impact on [his] course of treatment or recovery." In this respect, he argues that he was doing the exercises at home such that attending the scheduled physical therapy sessions was unnecessary. While the appellant's take on the missed physical therapy sessions might be one inference that could be drawn, it is an inference that is supported only by the testimony of the appellant, whom the Commission found not to be credible. The Commission, in denying the appellant's claim for benefits for future medical care and treatment, obviously inferred from the appellant's failure to attend numerous scheduled physical therapy sessions that he knew they were unnecessary, which it was free to do. "[I]f conflicting inferences might have been drawn, the choice rested with the Commission as to which should be accepted," *Simmons v. Wilson Freight Co.*, 549 S.W.2d 571, 572 (Mo.App.1977) (citation omitted), and we "defer to the Commission's judgment on factual disputes regarding inferences." *Circo v. A–Cord Elec.*, 969 S.W.2d 228, 233 (Mo.App.1998).

In denying the appellant's claim for benefits for future medical care and treatment, the Commission also found that the appellant had been "employed full-time without restrictions since 5/1/97." The appellant contends that this finding is not supported by substantial and competent evidence, but he fails to articulate a basis

for his contention. Our review of the record would indicate that the appellant had taken and passed a Department of Transportation physical for his current job, without any restrictions. The record would further reflect that Dr. Gilman did not impose any medical restrictions upon the appellant after his last visit. Thus, the Commission could have reasonably inferred from the appellant's apparent ability to work without restrictions since the accident that he was not in need of future medical care and treatment.

As further support for its denial of the appellant's claim for benefits for future medical care and treatment, the Commission relied on the fact that Dr. George, after examining the appellant on May 4, 1998, "found no reason to prescribe any physical therapy or any type of treatment or any medications." The Commission noted that this examination occurred almost a year to the day after Dr. Stefanovski had released the appellant to return to work full time and that he had, in fact, been working full time for two subsequent employers. In arguing that this finding does not support a denial of benefits for future medical care and treatment, the appellant contends that Dr. George's finding that the appellant was not "currently in need of active orthopedic treatment," is contrary to the stated purpose behind the Missouri Workers' Compensation Act, which is "to extend the benefits to the largest possible class of workers." *Wildman v. Plaza Motor Co.*, 941 S.W.2d 718, 720 (Mo.App.1997). However, he provides no further explanation as to specifically *how* the doctor's finding is contrary to the stated purpose of the Act. Without further explanation in support of his claim that the Commission's finding on this issue is not supported by substantial and competent evidence, we are not obligated to determine whether the Commission's finding is,

in fact, supported by substantial and competent evidence. *Christomos v. Holiday Inn Branson,* 26 S.W.3d 485, 487 (Mo.App. 2000). The only other argument advanced by the appellant in reference to the Commission's findings concerning Dr. George's evaluation is his contention that the Commission should not have found his evaluation to be more credible than Dr. Koprivica's report, as to the appellant's need for future medical care and treatment, as both physicians only saw the appellant on one occasion. However, as stated, *supra,* credibility calls are left to the Commission. *Smith,* 939 S.W.2d at 431.

As to whether the appellant was entitled to benefits for future medical care and treatment, the Commission also reviewed Dr. Stefanovski's medical records and the letter of December 30, 1998, from Dr. Stefanovski to the appellant's attorney. In this regard, the Commission noted that Dr. Stefanovski's treatment records from October 1996 through August 1997 indicated that, at the conclusion of the appellant's treatment, no physical therapy was recommended. However, Dr. Stefanovski's letter recommended that physical therapy be reinstituted. The Commission further noted, with respect to this letter, that it was written in response to an inquiry from the appellant's attorney, without Dr. Stefanovski having conducted a re-examination of the appellant. Thus, the Commission found that Dr. Stefanovski's treatment records for the period of October 1996 through August 1997 were credible, but that his letter recommending physical therapy was not. The appellant argues that this "is simply a misstatement of fact; the 'Commission' miscomprehended the evidence." In this regard, he contends that he returned to Dr. Stefanovski for an examination on November 5, 1998, because his shoulder pain had come back and that Dr. Stefanovski's letter was written based on this examination. However, we find

that it was reasonable for the Commission to conclude that the doctor's letter, written almost two months after examining the appellant, was less credible than that same doctor's medical reports written immediately following each visit. The appellant also argues that "[t]he fact that [his] attorney asked the doctor for a letter clarifying the already existing medical record has nothing to do with credibility." However, in reviewing and comparing Dr. Stefanovski's findings in his treatment records with his findings in his letter of December 30, we find that the Commission could have reasonably inferred that they were in conflict. We will not disturb credibility calls on appeal. *Smith,* 939 S.W.2d at 431.

Finally, in denying the appellant's claim for benefits for future medical care and treatment, the Commission found that Dr. Koprivica's letter of August 21, 1999, written to the appellant's attorney, recommending additional physical therapy and treatment for the appellant and suggesting that further injections or decompression surgery might be necessary, was not credible. The appellant contends that the Commission's finding with respect to the letter was not supported by the evidence in that there is no indication that the doctor's opinion in this letter "was somehow tainted by the efforts of [his] attorney to secure medical benefits for [the appellant]." From the record, however, it appears that the Commission's basis for rejecting Dr. Koprivica's letter was not because it was written in response to a request from the appellant's attorney, but because it was contradictory to Dr. Koprivica's previous conclusion, made at the time of his evaluation of the appellant on October 7, 1997, that the appellant was at "maximum medical improvement." Thus, it would appear to us that this was a reasonable basis for the Commission's rejection of Dr. Koprivica's opinion that the appellant was in need

of future medical care and treatment. Again, this is an issue "involving the credibility of witnesses ... and this court will defer to the findings of the Commission." *Circo*, 969 S.W.2d at 235 (*citing Johnson v. Denton Const. Co.*, 911 S.W.2d 286, 288 (Mo. *banc* 1995)).

Viewing the evidence and the reasonable inferences therefrom in the light most favorable to the Commission's decision, we find that the Commission's denial of future medical benefits pursuant to § 287.140.1 was supported by substantial and competent evidence.

## B. Misapplication of the Law in Denying Benefits for Future Medical Care and Treatment

■ The appellant claims that the Commission misapplied the law in denying his claim for benefits for future medical care and treatment when it relied, in part, on the medical reports and letters of Dr. George and Dr. Koprivica indicating that the appellant had reached "maximum medical improvement" and Dr. George's diagnosis that he was not "currently in need of active orthopedic treatment." The appellant contends that because the Commission relied on the fact that he had reached "maximum medical improvement," in denying his claim for benefits for future medical care and treatment, it misapplied the law, as set forth in *Mathia*. In support of his claim, the appellant relies on language from *Mathia*, 929 S.W.2d at 277–78, stating that:

> The right to obtain future medical treatment should not be denied *merely* because it has not yet been prescribed or recommended as of the date of a workers' compensation hearing, regardless of whether there is evidence that its future need will be reasonably probable. Likewise, such future care to "relieve" should not be denied simply because a

claimant may have achieved maximum medical improvement, a finding not inconsistent with the need for future medical treatment.

(Emphasis added.) The appellant's reliance on *Mathia* is misplaced.

In *Mathia*, the employee presented expert medical evidence on his need for future medical care and treatment. 929 S.W.2d at 277. However, the Commission denied his claim based *solely* on the fact that no treatment had previously been prescribed and the employer's medical experts had determined that he had reached "maximum medical improvement." *Id.* The Southern District reversed the Commission's decision finding that it had "misapplied the law." *Id.* Based on our review of *Mathia*, it is our view that what the court was holding is that the mere fact that an employee has been evaluated as reaching "maximum medical improvement" does not conclusively refute the employee's claim that, to a reasonable probability, he or she will need future medical care and treatment.

Unlike in *Mathia*, in our case, as discussed, *supra*, the Commission did not rely *solely* on Dr. George's finding that he had reached "maximum medical improvement." Thus, based on our reading of *Mathia* and the record in this case, we find that the Commission did not misapply the law in denying the appellant's claim for benefits for future medical care and treatment.

Point denied.

## II.

In Point II, the appellant claims, in two subpoints, that the Commission erred in finding that his PPD from his claimed work-related injuries was only 7.5 percent of his body as a whole because its decision was not supported by substantial and competent evidence, was against the weight of

the evidence, and was a misapplication of the law. In his first subpoint, he claims that the Commission erred in rating his PPD at only 7.5 percent, based upon a finding of disability due to permanent injuries to his left shoulder and cervical spine, with no award for any injury to his lumbar spine, because its decision was not supported by substantial and competent evidence and was against the weight of the evidence in that the uncontroverted evidence established that, as a result of his work-related accident, he suffered a permanent and disabling injury to his lumbar spine. In his second subpoint, he claims that the Commission erred in reducing his PPD rating from 35 percent to 7.5 percent, based upon a finding that his PPD of the left shoulder and cervical spine was caused, in part, by a pre-existing condition, because in doing so the Commission misapplied the law in that the law only allows a reduction of a PPD rating for a pre-existing disability, not simply a pre-existing condition.

■ Workers' compensation awards for a PPD are authorized pursuant to § 287.190. "The reason for [an] award of permanent partial disability benefits is to compensate an injured party for lost earnings." *Hankins Const. Co. v. Mo. Ins. Guar. Ass'n*, 724 S.W.2d 583, 587 (Mo.App. 1986), *overruled on other grounds by Mo. Prop. & Cas. Ins. Guar. Ass'n v. Pott Indus.*, 971 S.W.2d 302, 306 (Mo. *banc* 1998). The amount of compensation to be awarded for a PPD is determined pursuant to the "SCHEDULE OF LOSSES" found in § 287.190.1. "Permanent partial disability" is defined in § 287.190.6 as being permanent in nature and partial in degree. Further, "[a]n actual loss of earnings is not an essential element of a claim for permanent partial disability." *Wiele v. Nat'l Super Mkts., Inc.*, 948 S.W.2d 142, 148 (Mo. App.1997). A permanent partial disability

can be awarded notwithstanding the fact the claimant returns to work, if the claimant's injury impairs his efficiency in the ordinary pursuits of life. *Sapienza v. Deaconess Hosp.*, 738 S.W.2d 149, 151 (Mo. App.1987). "[T]he Labor and Industrial Relations Commission has discretion as to the amount of the award and how it is to be calculated." *Id.* "It is the duty of the Commission to weigh that evidence as well as all the other testimony and reach its *own* conclusion as to the percentage of the disability suffered." *Id.* (citation omitted).

## A. Failure of the Commission to Award PPD Benefits for the Appellant's Claimed Low–Back Injury

■ In his first subpoint, he claims that the Commission erred in rating his PPD at only 7.5 percent, based upon a finding of disability due to permanent injuries to his left shoulder and cervical spine, with no award for any injury to his lumbar spine, because its decision was not supported by substantial and competent evidence and was against the weight of the evidence in that the uncontroverted evidence established that, as a result of his work-related accident, he suffered a permanent and disabling injury to his lumbar spine. In excluding the appellant's claimed lower back injury from its determination of his PPD rating of 7.5 percent, the Commission found: "There is insufficient evidence in the record to convince the Commission that employee suffered a permanent partial disability from the work accident on October 12, 1996, other than to the cervical spine and left shoulder for which permanent partial disability was awarded."

■ In a workers' compensation case in which an employee is seeking benefits for PPD, the employee has the burden of not only proving a work-related injury, but that the injury resulted in the disability claimed. *Hunsperger v. Poole Truck*

*Lines, Inc.,* 886 S.W.2d 656, 658 (Mo.App. 1994) (citations omitted). Thus, the appellant had the burden of proving to a reasonable probability an injury to his lumbar spine which entitled him to a PPD rating thereon. *Cooper v. Med. Ctr. of Independence,* 955 S.W.2d 570, 574–75 (Mo.App. 1997).

Dr. Stefanovski's treatment records reflect that the appellant complained of low-back pain at his first visit on October 31, 1996. Dr. Stefanovski's impression at the time was that he was suffering from "a low back strain." However, none of Dr. Stefanovski's records with respect to the appellant's subsequent visits reference or mention low-back pain. From this, it was reasonable for the Commission to infer that the appellant was not experiencing any problems with his lower back after his first visit with Dr. Stefanovski. Although other inferences might be drawn, the choice of which inference to draw rests with the Commission, *Simmons,* 549 S.W.2d at 572 (citation omitted), and we are to "defer to the Commission's judgment on factual disputes regarding inferences." *Circo,* 969 S.W.2d at 233.

Dr. Koprivica's report with respect to the appellant's visit of October 7, 1997, indicates that the appellant complained of low-back pain and paralumbar discomfort. As a result, Dr. Koprivica diagnosed the appellant as suffering from a chronic lumbosacral strain with the disability thereon being rated at "five (5) percent permanent partial disability to the body as a whole." However, as discussed, *supra,* the Commission found that Dr. Koprivica's report and letter were not "trustworthy" in that they contained inconsistent findings as to whether the appellant would need future medical care and treatment. In this regard, Dr. Koprivica found in his report concerning the October 7, 1997, visit that the appellant had reached "maximum med-ical improvement," whereas in his letter of August 21, 1999, he found that he was in need of future medical care and treatment. As "this is an issue involving the credibility of witnesses and the weight to be given to testimony, . . . this court will defer to the findings of the Commission." *Id.* at 235 (citation omitted).

In Dr. George's evaluation of the appellant conducted on May 4, 1998, there is no mention of low-back pain or injury. From this the Commission may have reasonably inferred that the appellant did not mention lower back pain because he was not suffering from lower back pain at the time of the examination, which it was free to do. *Simmons,* 549 S.W.2d at 572. However, the records of TRAC Physical Therapy Centers, where the appellant received physical therapy, contain numerous references to low-back injury and pain. TRAC's records indicate that at his initial visit on November 7, 1996, the appellant was assessed as having a "markedly limited and painful lumbar [spine]," for which he received treatment. The appellant argues that this evidence was uncontroverted, and that the Commission erred in not considering it. However, we cannot determine from the record whether the Commission rejected it or chose to give it little or no weight. The Commission was free to do either. *See Kaderly v. Race Bros. Farm Supply,* 993 S.W.2d 512, 514 (Mo.App.1999) (*citing Alexander v. D.L. Sitton Motor Lines,* 851 S.W.2d 525, 527 (Mo. banc 1993)) (holding "[t]he Commission is free to disbelieve [even] uncontradicted and unimpeached testimony"). The Commission is not required to make specific findings as to the credibility of disputed evidence, *Ransburg v. Great Plains Drilling,* 22 S.W.3d 726, 731 (Mo.App.2000), and there is no argument in this case that the evidence of the

appellant's claimed lower back injury was in dispute.

At the workers' compensation hearing, the ALJ personally observed and noted for the record that, although the appellant testified that he was having low-back pain, during the hearing "he was able to twist his lumbar spine [past 180 degrees]." This contradiction between the appellant's testimony and his actions obviously played a part in the ALJ's determination, and hence the Commission's, of the appellant's credibility, as the ALJ was able to personally observe the appellant's actions and demeanor, and we "cannot ignore that the ALJ was in a more favorable position to judge his credibility." *Circo,* 969 S.W.2d at 234 (citation omitted).

Viewing the evidence and inferences therefrom in the light most favorable to the Commission's decision, we find that the Commission's finding that the appellant did not suffer a permanent injury to his lower back justifying a workers' compensation award for PPD is supported by substantial and competent evidence.

■ In addition to claiming that the Commission's decision, in not awarding benefits for a PPD for his claimed lower back injury, was not supported by substantial and competent evidence, the appellant also claims that its decision was against the overwhelming weight of the evidence. In support of this claim, the appellant relies on: (1) the narrative report by Dr. Koprivica; (2) the appellant's physical therapy records; (3) the treatment records from Dr. Stefanovski; (4) the testimony of Teresi Herring, a co-worker of the appellant; and (5) the appellant's own testimony. Our review of the record, applying the second prong of the review set out in *Davis,* 903 S.W.2d at 571, convinces us that the Commission's decision in limiting its PPD rating to the appellant's injuries

to his left shoulder and cervical spine was not against the weight of the evidence.

First, with respect to the Commission's consideration of the medical records and reports of the treating physicians and the weight that they should have been given, as we found, *supra,* the Commission, despite the appellant's arguments as to their import, essentially made credibility calls that were unfavorable to the appellant's contention that he suffered a lower back injury for which he was entitled to a PPD rating. As to findings of the Commission which turn on credibility determinations, we are to give them considerable weight, *id.* at 567 (citing *Williams v. Int'l Shoe Co.,* 213 S.W.2d 657, 662 (Mo.App.1948)), which obviously works against the appellant's contention that the records and reports in question would weight the record in his favor as to his having suffered a work-related injury to his lower back entitling him to a PPD thereon.

As to the appellant's assertion that the testimony of Teresi Herring, his co-worker and driving partner, tipped the scales of evidence in his favor, the appellant points to her uncontradicted testimony that he had complained to her that he was presently having more pain in his lower back than before the accident. Obviously, this testimony would add little weight to the appellant's argument inasmuch as it was simply a reiteration of the self-serving statements made by the appellant. The appellant also points to Herring's testimony that after the accident she had to do more of the driving; he suffered from headaches, which he never did before; he took Tylenol every day, which he never did before; and, he got "knots" in his neck. While this testimony might be some evidence of the appellant's suffering lower back pain, its weight, in our view, would be minimal in the Commission's determina-

tion of whether his PPD was, in part, due to a permanent injury of his lower back.

As to the appellant's challenge that the greater weight of the evidence does not support the Commission's PPD rating of 7.5 percent, he contends that his testimony on direct examination as to low to middle back pain was uncontradicted and that there was "absolutely no finding of a lack of credibility" as to his testimony. As to there being no finding, as to his lack of credibility, the record reflects otherwise. The record reflects that the Commission specifically found that the appellant's testimony was not credible, due to the numerous inconsistencies contained therein, as well as his inability to recall certain dates and events. Thus, even if the appellant is correct in his assertion that his testimony was uncontradicted, the minimal weight obviously given to it by the Commission turned on a credibility determination, to which we must defer. *Circo*, 969 S.W.2d at 235 (*citing Johnson*, 911 S.W.2d at 288).

After evaluating the record as a whole, including those portions that the appellant contends are unfavorable to the Commission's PPD award, and considering its overall effect, we find that the Commission's exclusion of the appellant's claimed lower back injury from its PPD rating was not against the weight of the evidence.

### B. Commission's Reduction of Appellant's PPD Rating for Pre Existing Condition

In the second subpoint of Point II, the appellant claims that the Commission misapplied the law in reducing his PPD rating from 35 percent to 7.5 percent, based on a finding that his PPD resulted, in part, from a pre-existing *condition* of advanced degenerative disc disease of the low back, because the law only permits such a reduction based on a finding of a pre-existing

*disability*. In this respect, the appellant contends that the evidence was uncontradicted that the arthritic condition of his low back was asymptomatic prior to his job-related injury, which in no way impeded him from working.

 As stated, *supra*, in a workers' compensation case, in which the employee is seeking benefits for PPD, the employee has the burden of proving, *inter alia*, that his or her work-related injury caused the disability claimed. *Hunsperger*, 886 S.W.2d at 658 (citation omitted). As to the employee's burden of proof with respect to the cause of the disability in a case where there is evidence of a pre-existing condition, the employee can show entitlement to PPD benefits, without any reduction for the pre-existing condition, by showing that it was *non-disabling* and that the "injury cause[d] the condition to escalate to the level of [a] disability." *Miller v. Wefelmeyer*, 890 S.W.2d 372, 376 (Mo.App.1994); *see also, Lawton v. Trans World Airlines, Inc.*, 885 S.W.2d 768, 771 (Mo.App.1994) (holding that there is no apportionment for pre-existing non-disabling arthritic condition aggravated by work-related injury); *Indelicato v. Mo. Baptist Hosp.*, 690 S.W.2d 183, 186–87 (Mo.App.1985) (holding that there was no apportionment for pre-existing degenerative back condition, which was asymptomatic prior to the work-related accident and may never have been symptomatic except for the accident). To satisfy this burden, the employee must present substantial evidence from which the Commission can "determine that the claimant's preexisting condition did not constitute an impediment to performance of claimant's duties." *Miller*, 890 S.W.2d at 376. Thus, the law is, as the appellant contends, that a reduction in a PPD rating cannot be based on a finding of a pre-

existing *non-disabling* condition, but requires a finding of a pre-existing *disabling* condition.[3] The question in this subpoint is whether the Commission correctly applied the law as we find it in reducing the appellant's PPD rating from 35 percent to 7.5 percent. In this regard, it should be noted that the parties do not dispute in this subpoint that the appellant suffered a work-related accident, which resulted in compensable injuries to his left shoulder and neck and for which he is entitled to PPD benefits. The issue is the extent of the appellant's disability that was caused by such injuries.

■■■ The appellant contends that the Commission, in violation of the law, reduced his PPD rating from 35 percent to 7.5 percent based solely on a finding as to a pre-existing non-disabling condition, specifically, degenerative disc disease. A review of the Commission's final judgment would support that fact. In that regard, the Commission's judgment, in pertinent part, reads:

> While employee's testimony indicates that these conditions [of the left shoulder and cervical spine] were asymptomatic, they nevertheless preexisted the work accident.[4] The administrative law judge's finding that employee aggravat-

ed preexisting conditions in his neck and shoulder is supported by the record.[5]

From this, it appears to us that the Commission never made a determination as to whether the appellant's pre-existing condition was disabling or non-disabling because it was under the mistaken impression that it did not matter in that it assumed that, under the law, in determining the appellant's PPD award, any pre-existing condition, regardless of whether it was disabling, required it to apportion the appellant's disability between the compensable injury and the pre-existing condition. Thus, in awarding the appellant a 7.5 percent PPD, we find that the Commission misapplied the law, requiring us to reverse the award and remand the cause to the Commission to determine whether the appellant's pre-existing condition was disabling or non-disabling and to enter its PPD award accordingly.

### Conclusion

The decision of the Commission denying the appellant's request for workers' compensation benefits for future medical care and treatment is affirmed. The Commission's decision awarding the appellant benefits for a PPD rating of 7.5 percent is reversed and the cause remanded for fur-

---

3. In a workers' compensation case, " '[w]here two events, one compensable and one not compensable, contribute to alleged disability, it is claimant's burden to prove the nature and extent of disability attributed to the job-related injury.' " *Miller v. Wefelmeyer*, 890 S.W.2d 372, 376 (Mo.App.1994) (*quoting Bersett v. Nat'l Super Mkts., Inc.*, 808 S.W.2d 34, 36 (Mo.App.1991)). In this regard, "[t]he claimant must offer expert testimony as to the extent of a preexisting disability, in order to determine what percentage of permanent partial disability is attributable to the compensable, job-related disability." *Id.* (*citing Plaster v. Dayco Corp.*, 760 S.W.2d 911, 913 (Mo.App. 1988)).

4. In addition to the appellant's testimony, Dr. Koprivica's evaluation indicated that the appellant's pre-existing condition was non-disabling and would not have resulted in a disability, absent the work-related injury.

5. The ALJ relied on Dr. George's evaluation that the appellant's disability was, in part, attributable to his pre-existing condition. However, Dr. George's evaluation makes no finding as to whether the condition was disabling or non-disabling.

ther proceedings consistent with this opinion.

SPINDEN, C.J., and NEWTON, J., concur.