**Roy L. SMITH, Appellant,**

v.

**DONCO CONSTRUCTION, Respondent,**

and

**Ohio Casualty Insurance Company, Respondent.**

No. 26903.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 23, 2006.

William W. Francis, Jr., and Ryan E. Murphy, Placzek & Francis, Springfield, for appellant.

Patrick J. Platter and Jeffrey C. Goodnight, Neal & Newman, L.L.P., Springfield, for Respondent.

**ROBERT S. BARNEY, Judge.**

Appellant Roy L. Smith ("Claimant") appeals from a final award denying compensation entered by the Labor and Industrial Commission ("the Commission"), arising from a claim for compensation made by Claimant against Respondent Donco Construction ("Employer") for a purported injury suffered at Employer's job site.[1]

In denying relief to Claimant, the Commission affirmed the decision of the Associate Administrative Law Judge ("the ALJ"), which had determined that at the time of the purported injury Claimant suffered from a pre-existing and "ordinary disease of life in the nature of discitis and related intervertebral osteomyelitis."[2] The ALJ found that the foregoing "conditions are extremely rare and there is no evidence to support the conclusion that [these conditions] would have resulted from [Claimant's] work with a drill ham-

---

1. According to Claimant, at the time of his injury he was in a squatting position drilling holes in a vertical concrete cement slab with a one-inch drill which weighed approximately twenty pounds. Claimant stated that such drilling "required significant pushing and pulling." After drilling a number of holes and as he attempted to stand from a squatting position with the drill in his hands, Claimant felt a sharp pain in his low back and was unable to completely straighten up.

2. The ALJ explained, in part, that from his review of the medical testimony "[d]iscitis is an infection of the intervertebral disc itself. The infection may spread past the disc and surrounding area to be osteomyelitis, which is an infection of the osteovertebral bodies on either side of the disc." Furthermore, the ALJ related that "[t]he disease can have a latent asymptomatic stage. The symptoms can be confusing since the first is back pain and that pain may progress, such as an impingement upon a nerve root with radiculopathy. The disease can progress to having fevers, chills, and other systemic systems."

mer and concrete on August 12, 1999."[3]

Claimant now raises one point in his appeal. He maintains:

[t]he Commission erred in denying [his] claim for compensation, because the denial is based on an erroneous finding that his disability resulted from a pre-existing condition of dis[c]itis and vertebral osteomyelitis, in that the law only permits such a denial when there is evidence of a pre-existing disability which was absent in the facts and evidence.

Stated another way, Claimant argues that "the evidence is uncontradicted that the condition of [his] lower back was asymptomatic prior to his job-related injury and in no way impeded him from working." He asserts that his "pushing, pulling and straining" while squatting in a horizontal position and pulling a heavy cement drill triggered the symptoms of "a previously asymptomatic infection in his back" and that this particular activity caused him to suffer severe back pain. He also relates that "[b]efore the specific onset of this injury on August 12, 1999, [he] had only experienced mild back problems many years before for which he was able to receive complete relief from a chiropractor." Accordingly, he asserts his symptoms were either caused or accelerated as a direct result of his employment with Employer. Therefore, Claimant maintains it was error to deny him compensation for his work-related medical expenses and permanent partial disability claim.

In support of his assertions, Claimant cites to *Rana v. Landstar TLC*, for the proposition that a claimant "can show entitlement to [permanent partial disability] benefits, without any reduction for [a] pre-existing condition, by showing that it was *non-disabling* and that the 'injury caused the condition to escalate to the level of a disability.'" *Rana v. Landstar TLC*, 46 S.W.3d 614, 629 (Mo.App.2001), *overruled in part by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 225 (Mo. banc 2003) (quoting *Miller v. Wefelmeyer*, 890 S.W.2d 372, 376 (Mo.App.1994), *overruled in part by Hampton*, 121 S.W.3d at 228); *see also Lawton v. Trans World Airlines, Inc.*, 885 S.W.2d 768, 771 (Mo.App.1994), *overruled in part by Hampton*, 121 S.W.3d at 228; *Indelicato v. Mo. Baptist Hosp.*, 690 S.W.2d 183, 186–87 (Mo.App.1985), *overruled in part by Hampton*, 121 S.W.3d at 231.

Claimant presented the testimony of Dr. Andrew Myers ("Dr. Myers"), who diagnosed Claimant as suffering from an annular tear in the discs at "L4–L5 and L5–S1." Dr. Myers opined that the "injury which [Claimant] sustained on August 12, 1999, precipitated the back pain which led to his disability." Dr. Myers then rated Claimant at "10 to 15 percent permanent partial disability of the body as a whole ..." attributable only to the on-the-job injury, exclusive of the discitis and associated osteomyelitis.

■ Respondents assert, on the other hand, that the Commission properly denied compensation.[4] They maintain

---

**3.** The ALJ expressly determined that the "medical conditions for which [Claimant sought] workers' compensation benefits do not pertain to an injury by accident, as defined in [s]ection 287.020(2) and (3), RSMo, or an occupational disease, as defined in [s]ection 287.067(1), RSMo." Further, the ALJ noted that the "exhibits before the Division do not identify an event or series of events,

which would constitute an accident under [section] 287.020.2 RSMo. Nor does the evidence support a claim of occupational disease based on repetitive trauma."

Unless otherwise stated, all statutory references are to RSMo 2000.

**4.** Respondent Ohio Casualty Insurance Company is the insurer in this case. "In Missouri,

Claimant had an ordinary disease of life as defined in section 287.067(1), and as underscored by the fact that there was substantial and competent evidence before the Commission that Claimant had the disease of "discitis and vertebral osteomyelitis" which is not a work-related condition. In support they tender the testimony of their expert medical witness, Dr. Wolfe Gerecht ("Dr. Gerecht"). Further, Respondents maintain that a disease of life is not compensable as an injury following an accident, section 287.020.3(2)(d), nor is an occupational disease compensable if it is derived from an ordinary disease of life. *See* § 287.067.1.

■ "A court must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Hampton*, 121 S.W.3d at 222–23.

> 'We may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other: (1) that the Commission acted without or in excess of its powers; (2) that the award was procured by fraud; (3) that the facts found by the Commission do not support the award; and (4) that there was not sufficient competent evidence in the record to warrant the making of the award.'

*Russell v. Invensys Cooking & Refrigeration*, 174 S.W.3d 15, 22 (Mo.App.2005) (quoting *Shelton v. Mo. Baptist Med. Ctr.*, 42 S.W.3d 700, 701 (Mo.App.2001)); *see* § 287.495.1.

■ "'The Commission reviews the record, and where appropriate, it will also determine the credibility of witnesses and weight of their testimony, resolve any conflicts in the evidence, and reach its conclusions on factual issues *independent* of the ALJ.'" *Id.* (quoting *Shaw v. Scott*, 49 S.W.3d 720, 728 (Mo.App.2001)). "The 'Commission's interpretation and application of the law are not binding on this Court and fall within our realm of independent review and correction.'" *Id.* (quoting *Bowers v. Hiland Dairy Co.*, 132 S.W.3d 260, 263 (Mo.App.2004)).

■ "'The acceptance or rejection of medical evidence is for the Commission.'" *Id.* at 23 (quoting *Sullivan v. Masters Jackson Paving Co.*, 35 S.W.3d 879, 884 (Mo.App.2001), *overruled in part by Hampton*, 121 S.W.3d at 225). "'The fact finder may reject all or part of an expert's testimony.'" *Id.* (quoting *Bennett v. Columbia Health Care*, 134 S.W.3d 84, 92 (Mo.App.2004)). "We will uphold the Commission's 'decision to accept one of two conflicting medical opinions' if such a finding is supported by competent and substantial evidence." *Russell*, 174 S.W.3d at 23 (quoting *Birdsong v. Waste Mgmt.*, 147 S.W.3d 132, 137 (Mo.App.2004)). "When witnesses are deposed and do not testify live before the ALJ, the Commission is just as able as the ALJ to determine credibility from the written record." *Birdsong*, 147 S.W.3d at 137–38. "'We will not overturn the Commission's determination regarding conflicting medical opinions, unless it is against the overwhelming weight of the evidence.'" *Russell*, 174 S.W.3d at 23 (quoting *Bennett*, 134 S.W.3d at 92).

■ Section 287.020.2 provides that "[a]n injury is compensable if it is clearly work related" and "[a]n injury is clearly work related if work was a substantial

an insured employer's liability is secondary and indirect; the insurer is primarily and directly liable." *Mikel v. Pott Indus.*, 896 S.W.2d 624, 625 (Mo. banc 1995); *see also* §§ 287.300 and 287.035.4.

factor in the cause of the resulting medical condition or disability." [5] "Claimant has the burden of showing that [an] accident arose out of and in the course of employment." *Simmons v. Bob Mears Wholesale Florist*, 167 S.W.3d 222, 225 (Mo.App. 2005). " 'Arising out of' and 'in the course of' employment are two separate tests, and both must be met before an employee is entitled to compensation." *Id.* (quoting *Abel v. Mike Russell's Std. Serv.*, 924 S.W.2d 502, 503 (Mo. banc 1996)).

 "To meet the test of an injury 'arising out of' the employment, the injury must be a natural and reasonable incident of the employment, and there must be a causal connection between the nature of the duties or conditions under which employee is required to perform and the resulting injury." *Id.* " 'In the course of employment' refers to the time, place and circumstance of an employee's injury." *Simmons*, 167 S.W.3d at 225.

 An injury is not compensable merely "because work was a triggering or precipitating factor." § 287.020.2; *see also Wagner–Jones v. Harbert Yeargin Constr. Co.*, 145 S.W.3d 511, 517 (Mo.App.2004). "However, a work related accident can be both a triggering event and a substantial factor." *Cahall v. Cahall*, 963 S.W.2d 368, 372 (Mo.App.1998), *overruled in part by Hampton*, 121 S.W.3d at 226.

> Workers' compensation awards for [permanent partial disability] are authorized pursuant to [section] 287.190. 'The reason for an award of permanent partial disability benefits is to compensate an injured party for lost earnings.' [Per-

manent partial disability] is defined in [section] 287.190.6 as being permanent in nature and partial in degree. '[A]n actual loss of earnings is not an essential element of a claim for permanent partial disability.' [Permanent partial disability] can be awarded notwithstanding the fact the claimant returns to work, if the claimant's injury impairs his efficiency in the ordinary pursuits of life. [The Commission] 'has discretion as to the amount of the award and how it is to be calculated.' 'It is the duty of the Commission to weigh that evidence as well as all the other testimony and reach its *own* conclusion as to the percentage of the disability suffered.'

*Rana*, 46 S.W.3d at 626 (internal citations omitted).

 "[I]n a workers' compensation case, in which the employee is seeking benefits for [permanent partial disability], the employee has the burden of proving, *inter alia*, that his or her work-related injury caused the disability claimed." *Id.* at 629.

> As to the employee's burden of proof with respect to the cause of the disability in a case where there is evidence of a pre-existing condition, the employee can show entitlement to permanent partial disability benefits, without any reduction for the pre-existing condition, by showing that it was *non-disabling* and that the 'injury caused the condition to escalate to the level of a disability.

*Id.* (quoting *Miller*, 890 S.W.2d at 376).

 Here, the record reveals that Claimant had experienced fever and chills

---

**5.** Likewise, "[t]he claimant bears the burden of proving a direct causal relationship between the conditions of his employment and an occupational disease." *Jacobs v. City of Jefferson*, 991 S.W.2d 693, 696 (Mo.App. 1999), *overruled in part by Hampton*, 121 S.W.3d at 226. In proving up a work-related occupational disease, " '[a] claimant's medical expert must establish the probability that the disease was caused by conditions in the work place.' " *Brundige v. Boehringer Ingelheim*, 812 S.W.2d 200, 202 (Mo.App.1991) (quoting *Sheehan v. Springfield Seed & Floral, Inc.*, 733 S.W.2d 795, 797 (Mo.App.1987)).

within twelve to eighteen hours after the purported incident of August 12, 1999. In time, Claimant experienced a body temperature of 100.4 degrees, and his treating physicians eventually prescribed two antibiotics. He was referred to Dr. Jeff Woodward ("Dr. Woodward"), an "occupational" medical physician, who initially treated Claimant for a "work-relate[d] lumbar strain." However, Dr. Woodward eventually referred Claimant for an MRI scan. The MRI scan was performed on September 23, 1999, and showed that Claimant suffered from "infectious discitis" or a disk space infection.

In reviewing the MRI scan and consulting a neuroradiologist at Cox Medical Center, Dr. Woodward, who had previously treated Claimant for a musculo-skeletal disorder, then opined that "if the infectious discitis diagnosis is correct, then there has been no work-related injury. . . ."

The record also reveals that a CT-directed needle biopsy was performed in Claimant's L2–L3 disc space, which indicated "[c]hronic osteomyelitis with chronic periosteal inflammation." In consultation with Dr. Gerecht, a board certified internal medicine specialist with a subspecialty in infectious diseases, Claimant was diagnosed with "[v]ertebral osteom[y]elitis and dis[c]itis with continued symptoms." Claimant was treated with antibiotics through a percutaneous inserted central catheter ("PICC") line, and discharged to go home with intravenous antibiotic therapy which included Cefazolin and Cipro.[6]

As previously related, Dr. Myers diagnosed Claimant as suffering from an annular tear in the disc at L4–L5 and L5–Sl. He agreed that the radiologist who reviewed the MRI scan on September 23, 1999, did not find annular tears at any intervertebral disc, but noted such tears "oftentimes [are] not diagnosed radiographically." Dr. Myers did not disagree with the treatment diagnosis or diagnostic measures taken by other treating physicians who found discitis and intervertebral osteomyelitis, but acknowledged, nevertheless, there existed an "overlap between those two conditions and [Claimant's] complaints of pain."

Dr. Myers, also acknowledged that "intervertebral osteomyelitis or dis[c]itis is normally not the first diagnosis to be considered when evaluating back pain . . ." and that "dis[c]itis, intervertebral osteomyelitis, is typically, in the ordinary course of medical practice, going to be a slower condition to diagnose rather than other sources of mechanical back pain. . . ."

In his examination, Dr. Gerecht noted that the discitis was the reason for Claimant's previous hospitalization and, likewise, the reason for follow-up office visits and his prescription of both intravenous and oral antibiotics. When asked whether "dis[c]itis [is] commonly associated by its onset with physical activity without direct penetrating trauma," he answered, "[i]t usually is not." On cross-examination Dr. Gerecht related that the "vast majority of Staph aureus infections are not latent, and it's only a matter of time before somebody develops clinical symptomatology," and that "[i]f you are pushing and straining, the symptoms might begin today rather than tomorrow." But he also related that "[y]ou may notice the onset of symptoms with the stress or straining no matter what you are doing. Eventually you are going to become symptomatic. The question is when."

Significantly, Dr. Gerecht acknowledged that Claimant's condition, i.e., his dis[c]itis and associated vertebral osteomyelitis, did

---

**6.** Dr. Myers agreed that a PICC line is as "a type of intravenous treatment so that the pa-tient can have intravenous antibiotics fed to him."

not result from Claimant "bending over." He opined that the bending over was not the cause of the pain, but that the pain was a result of "the symptoms of the underlying disease." Dr. Gerecht also discounted the possibility that a needle stick would have led to an infection in the low back.

 As previously related, the Commission's decision will be upheld if it is consistent with either of two conflicting medical opinions. *Hutchinson v. Tri-State Motor Transit Co.*, 721 S.W.2d 158, 162 (Mo.App.1986), *overruled in part by Hampton,* 121 S.W.3d at 231. "The [C]ommission's choice of one medical opinion over another is binding on us unless the choice clearly results from an abuse of discretion." *Decker v. Square D Co.*, 974 S.W.2d 667, 670 (Mo.App.1998). While the issue is close, "[w]e do not discern an abuse of discretion." *Id.* "Where, as here, the Commission's award incorporates the ALJ's award and decision, we consider the findings and conclusions of the Commission as including the ALJ's award." *Clark v. FAG Bearings Corp.*, 134 S.W.3d 730, 734 (Mo.App.2004). Both the ALJ, and the Commission by affirming the award of the ALJ, expressly found the medical opinions offered by Dr. Gerecht to be credible. Furthermore, "[a] reviewing court may not substitute its judgment for that of the Commission's as to the issue of witness credibility." *Tangblade v. Lear Corp.*, 58 S.W.3d 662, 670 (Mo.App.2001).

Here, it was Claimant's burden to prove that his injuries arose out of and in the course of his employment. *Lytle v. T-Mac, Inc.*, 931 S.W.2d 496, 499 (Mo.App. 1996), *overruled in part by Hampton,* 121 S.W.3d at 227. Nevertheless, "a claim will not be validated where some essential element is lacking." *Johnson v. City of Kirksville*, 855 S.W.2d 396, 398 (Mo.App. 1993), *overruled in part by Hampton,* 121 S.W.3d at 229. Based on our review of the record as a whole, including the opinions of Dr. Woodward and Dr. Gerecht, there is sufficient, substantial and competent evidence supporting the Commission's final award denying compensation, based on a lack of a causal connection between Claimant's underlying discitis and vertebral osteomyelitis, a non-work related disease, and Claimant's work activity on the day of the purported accident. Point denied.

The Commission's final award denying compensation is affirmed.

SHRUM, P.J., and GARRISON, J., concur.